**Willie G. SULLIVAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 4, 1994.

Decided: Feb. 10, 1994.

Rehearing Denied Feb. 28, 1994.

---

Bernard J. O'Donnell, Asst. Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr. (argued), Loren C. Meyers, Timothy J. Donovan, Jr., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ. (constituting the Court *en Banc*).

HOLLAND, Justice:

The defendant-appellant, Willie G. Sullivan ("Sullivan"), was indicted on charges of Murder in the First Degree, Robbery in the First Degree, Burglary in the Second Degree, Felony Theft, Misdemeanor Theft, and Possession of a Deadly Weapon During the Commission of a Felony. On December 2, 1992, Sullivan pled guilty to all charges, including an additional charge of Conspiracy in the First Degree under a separate indictment.[1] Following a penalty hearing, a jury recommended, by a vote of nine to three, that Sullivan be sentenced to death for the offense of Murder in the First Degree.

On December 30, 1992, the Superior Court sentenced Sullivan to death by lethal injection for the offense of Murder in the First Degree. The Superior Court also sentenced Sullivan to be incarcerated for a total of 23 years with regard to the other convictions. Sullivan's trial attorney filed a timely notice of appeal with this Court. An automatic appeal was also docketed. 11 *Del.C.* § 4209(g). Those appeals have been consolidated. This Court has stayed Sullivan's execution during the pendency of this appeal.

In this direct appeal, Sullivan contends that his convictions should be reversed because the record of his guilty pleas was inadequate to support the Superior Court's factual conclusion that those pleas were made

---

1. Sullivan pled guilty to Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony on the basis of co-conspirator liability. At the penalty hearing, however, Sullivan did not contest the State's position that he had acted as the principal in the killing of Maurice Dodd.

knowingly, voluntarily and intelligently. Sullivan also argues that this Court should reverse the sentence of death and remand this matter to the Superior Court for a new penalty hearing because: (1) the striking of jurors for cause, based upon their stated reservations about imposing the death penalty, was not constitutionally mandated since in Delaware the jury serves only in an advisory capacity, and denied Sullivan a jury composed of a fair cross-section of the community; (2) the State's victim impact evidence exceeded the scope permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (3) the State made improper and pervasive inflammatory remarks in its closing arguments to the jury during the penalty hearing; (4) the instructions were inadequate to inform the jury that evidence of Sullivan's alleged mental retardation could be considered as a mitigating factor; (5) in imposing a sentence of death, the Superior Court failed to give adequate consideration to mitigating evidence that Sullivan was mentally retarded, and abused its discretion in discounting expert testimony that Sullivan was mentally retarded; (6) the imposition of a death sentence was constitutionally impermissible, since the aggravating circumstances did not outweigh the mitigating circumstances "beyond a reasonable doubt" and, thus, death was an inappropriate punishment under the "totality of the circumstances"; and (7) the sentence of death imposed on Sullivan is disproportionate to sentences imposed in Delaware in similar cases.

This Court has reviewed each of Sullivan's contentions. We find no reversible error. 11 *Del.C.* § 4209. We have concluded that the judgments and sentences imposed upon Sullivan by the Superior Court, including the sentence of death by lethal injection, should be affirmed.

### Facts

The homicide victim, Maurice W. Dodd ("Dodd"), was 78 years old at the time of his death. Dodd resided in a house trailer in Frederica, Delaware. On the same premises he operated a small nursery, "Dodd's Nursery and Flower Garden."

Sullivan confessed to the killing of Dodd, after being advised of and waiving his *Miranda*[2] rights. Sullivan's confession was in the form of a statement given to Sergeant Michael L. Warrington of the Delaware State Police. According to Sullivan, his motive for the killing was that he "needed some money."

The record reflects the occurrence of the following events. Sullivan and Lenny Harrison ("Harrison") had planned to kill Maurice Dodd and steal money from him. In his statement to the police, Sullivan acknowledged that he had begun to think about killing Dodd for his money in the summer of 1991, while he was working for Dodd. The plan was for Harrison to lure Dodd into one of the greenhouses on the pretext of buying flowers. Once Dodd was inside, Sullivan was supposed to kill him.

The plan was partially carried out twice. First, on December 13, 1991, Harrison and Sullivan went to Dodd's property and proceeded with their plan up to the point in time when Sullivan was supposed to kill Dodd. Sullivan then became frightened. He and Harrison both fled. Second, on December 24, 1991, Sullivan went to Dodd's home alone to kill and rob him. Once again, however, Sullivan abandoned that idea.

On December 27, 1991, after being driven to Frederica by his sister, Sullivan went to Harrison's home to obtain his help in carrying out their original plan. When he could not find Harrison, Sullivan walked to Dodd's house alone, arriving at about 6:30 p.m. Sullivan was armed with a kitchen knife, which was concealed in his jacket.

Upon arrival, Sullivan asked Dodd if he had any flowers for sale. Dodd told Sullivan to go to one of the greenhouses and wait for him. When Dodd came through the door to the greenhouse a few minutes later, Sullivan attacked him from behind, stabbing him with the knife. Dodd attempted to escape from the greenhouse. Sullivan dragged him back inside and stabbed Dodd several more times.

Sullivan inflicted a total of ten knife wounds upon Dodd's face, chest, back, right

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

arm, and right hand. Sullivan then picked up a metal ice scoop and struck Dodd repeatedly on his head until the scoop broke into pieces. Finally, with Dodd collapsed on the ground and groaning, Sullivan lifted up a large concrete block and threw it down upon him.

Dodd soon died. Sullivan removed a wallet from Dodd's pocket. It contained $283. Sullivan then went inside and threw the kitchen knife behind the greenhouses. After checking to make certain that Dodd was dead, Sullivan put a cement block in front of the greenhouse door.

Sullivan then went back into Dodd's house. Sullivan ransacked the bedroom, looking for more money. He was only able to find some rolls of change, totalling about $64, and a set of car keys. Sullivan took the keys and fled in Dodd's automobile.

Over the next several days, Sullivan drove his friends to local shopping malls in the stolen automobile. Sullivan purchased basketball sneakers, two cassette tapes, a portable tape player, headphones, and a hat with the proceeds of the robbery. He also gave various amounts of money to his friends and family. By New Year's Day, all of the money that Sullivan had taken from Dodd was gone. Sullivan eventually abandoned the stolen automobile in the parking lot of Kent General Hospital in Dover.

Three days after the murder, concerned neighbors found Dodd's body in the greenhouse. Sullivan had told several friends, including Harrison, that he had killed Dodd. Information implicating Sullivan in Dodd's death and the other crimes committed at the nursery soon reached the Delaware State Police. Sullivan was arrested on January 3, 1992.

Sullivan pled guilty to the charge of Murder in the First Degree and other offenses on December 2, 1992. A penalty hearing was scheduled. Beginning on December 7, 1992 and ending on December 9, 1992, a jury heard evidence to determine the appropriate sentence to be imposed.

Prior to the penalty hearing, the State gave notice of its intent to prove that two statutory aggravating circumstances existed: (1) the murder was committed during the commission of a robbery; and (2) the murder was committed while Sullivan was engaged in the commission of a burglary.[3] *See* 11 *Del.C.* § 4209(e)j.

The State also alleged the existence of the following non-statutory aggravating circumstances: (1) the particular circumstances and details of the murder; (2) Dodd's age of 78 years; (3) Dodd was defenseless; (4) the murder was premeditated; (5) the murder was committed in cold blood; (6) Sullivan lured Dodd from his residence under false pretense and attacked him by surprise; (7) the killing was merciless; (8) Dodd's character; and (9) victim impact evidence.

Pursuant to 11 *Del.C.* § 4209(c), Sullivan's counsel provided notice to the Superior Court of their intent to prove the following

---

**3.** Although the age of the victim was 78, the State elected not to rely upon that age as a *statutory* aggravating circumstance. *See* 11 *Del.C.* § 4209(e)r. The following exchange occurred during a conference in chambers prior to the reading of jury instructions:

THE COURT: I have your letters setting forth the various statutory and nonstatutory aggravating circumstances. I have a question regarding the State's.

Listed as number two is the victim's age, seventy-eight years of age at the time of the murder. Although you have listed that a nonstatutory aggravating circumstance, under 4209(r), if the victim was sixty-two years of age or older, that is a statutory aggravating circumstance.

[PROSECUTOR]: Your Honor, we did not list that as a statutory aggravating circumstance because there's a question as to whether or not that section is constitutional. There is a case cited in the annotation under 4209 which states that the age of the victim and the fact the victim was defenseless were held unconstitutionally vague. [*State v. White*, Del.Supr., 395 A.2d 1082 (1978)].

I believe that in response—I am not sure whether it was in response to that case or not, but the statute was amended to list a specific age. I don't believe the statute prior to that case mentioned a specific age.

We listed that as a nonstatutory aggravating circumstance just to err on the side of caution. We do not seek to rely on that as a statutory aggravator. We feel the constitutionality of that section is still up in the air.

THE COURT: All right.... Any comments?

[DEFENSE COUNSEL]: That's certainly acceptable, Your Honor.

mitigating factors: (1) Sullivan accepts responsibility for his wrongful conduct; (2) Sullivan is remorseful for his wrongful conduct; (3) Sullivan is a non-violent person other than with respect to the incident in question; (4) Sullivan was a youthful person at the time of the offense (date of birth, July 17, 1971); (5) Sullivan has a family whom he loves and who love him; (6) Sullivan was kind to his family, neighbors and associates; (7) Sullivan is a member of a family whose other members would continue to visit him if he was incarcerated for the remainder of his life; (8) Sullivan has no significant history of· prior criminal activity; (9) Sullivan has been a good prisoner since his pretrial incarceration at Delaware Correctional Center; (10) Sullivan expressed remorse for his wrongful conduct immediately thereafter, as evidenced by his voluntary statement to the police; (11) Sullivan was the party who fled and abandoned the prior conspiracy, as evidenced by his voluntary statement to the police; (12) Sullivan is a person who suffers from psychological/intellectual problems; (13) Sullivan exhibits positive personality traits; (14) Sullivan has held gainful employment; and (15) Sullivan has the potential for rehabilitation.

Following the penalty hearing, during which the State and Sullivan presented evidence in support of their respective representations, the jury recommended, by a vote of nine to three, that Sullivan be sentenced to death for the offense of Murder in the First Degree. In announcing its sentencing decision, the Superior Court stated although it "found several mitigating circumstances, they are clearly outweighed by the aggravating circumstances of this crime and Sullivan's demonstrated propensity to plan and prey upon the elderly and defenseless by killing such a person only for money."

The Superior Court also found that two statutory aggravating circumstances had been established beyond a reasonable doubt. In conjunction with the non-statutory aggravating circumstances, the Superior Court concluded the "preponderance of the evidence" established that all aggravating circumstances outweighed all mitigating circumstances. The Superior Court sentenced Sullivan to death by lethal injection. 11 *Del.C.* § 4209(d).

### *Guilty Pleas*
### *Knowing and Voluntary*

■ Sullivan contends that the record of his guilty pleas was inadequate for this Court to determine whether the Superior Court abused its discretion in finding that the pleas· were made knowingly and voluntarily. Only questions that have been fairly presented to the trial court may be reviewed by this Court, unless the "interests of justice" require that we extend review to questions not so raised. Supr.Ct.R. 8. Sullivan did not file a motion to withdraw his guilty pleas in the Superior Court.

■ The absence of such a motion, however, does not preclude review by this Court: "[F]ailure of a trial court to ascertain whether a plea of guilty has been entered knowingly and voluntarily is a concern of constitutional implication." *See Webster v. State,* Del.Supr., 604 A.2d 1364, 1366 (1992) (citing *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). Therefore, we will review the record of Sullivan's guilty pleas for plain error.

■ It is well-established that a sufficient basis for the entry of a guilty plea must appear on the record to permit appellate review of a subsequent challenge. *Fromal v. State,* Del.Supr., 399 A.2d 529 (1979). Before accepting a guilty plea, the trial judge must address the defendant in open court. The judge must determine that the defendant understands the nature of the charges and the various penalties provided for the offenses. The record must reflect that the defendant understands that the guilty plea constitutes a waiver of a trial on the charges and the various constitutional rights to which he would have been entitled had he gone to trial. Super.Ct.Crim.R. 11(c). The trial judge must also determine that a guilty plea is voluntary and not the result of force, threats, or promises apart from the plea agreement. Super.Ct.Crim.R. 11(d). *See Howard v. State,* Del.Supr., 458 A.2d 1180, 1184–85 (1983).

■ The record reflects that Sullivan's decision to enter guilty pleas was the result of advice and deliberation with his appointed counsel. Sullivan entered the pleas on the eve of trial, following jury selection, after extensive discovery had been completed. Furthermore, the Truth in Sentencing Guilty Plea Form, which includes responses in Sullivan's handwriting, reinforces the Superior Court's conclusion that his decision to plead guilty to the charges was both knowing and voluntary (Appendix I).

Sullivan had every opportunity to present his current arguments to the Superior Court in a motion to withdraw his guilty pleas. *See* Super.Ct.Crim.R. 32(d). The record reflects that a motion to withdraw his guilty pleas was, in fact, considered by Sullivan but was not pursued. The day after Sullivan had entered his guilty pleas, his appointed attorneys advised the Superior Court that Sullivan planned to withdraw his guilty pleas and to seek the appointment of new counsel. Sullivan then changed his mind almost immediately. The Superior Court was promptly advised that Sullivan had decided not to attempt to withdraw his guilty pleas.

The Superior Court asked Sullivan why he had changed his mind and decided not to withdraw his guilty pleas. Sullivan responded that he had been "scared at first" after making the pleas because he had not been able to talk with his mother or sister. Having subsequently spoken with them, Sullivan said, he decided not to withdraw his guilty pleas. At the end of this second colloquy, the Superior Court judge reiterated his finding that the guilty pleas were entered by Sullivan knowingly and voluntarily.

Sullivan argues, nevertheless, that his monosyllabic responses to the Superior Court judge's questions ("yes" or "no"), during the original plea colloquy, did not provide the judge with sufficient evidence to ascertain the adequacy of the pleas. Super.Ct.Crim.R. 11. Sullivan's counsel argues that the known limitations of Sullivan's mental capability required that the trial judge not only undertake the usual comprehensive inquiry in accepting a guilty plea, but also elicit comprehensive responses from Sullivan.

In support of his position that the guilty plea colloquy in the trial court was inadequate, Sullivan cites this Court's decision in *Webster v. State,* Del.Supr., 604 A.2d 1364 (1992). The circumstances of *Webster,* however, are distinguishable from those of the case *sub judice.* In *Webster,* this Court noted that "[a]side from responses of 'guilty' to the court's recitation of the indictment, a nod of the head when asked if he heard his codefendant's sentencing colloquy and [the defendant]'s signature on a guilty plea form, there is very little to support a finding that [the defendant] was aware of the nature and elements of the charges against him." *Id.* at 1366.

■ In contrast to *Webster,* Sullivan responded to each question posed by the Superior Court judge during an extensive initial colloquy and completed the entire guilty plea form in his own handwriting (Appendix I). Sullivan had the opportunity to reconsider his decision before finally rejecting the option of filing a motion to withdraw his pleas and reiterating his desire to plead guilty during a second colloquy with the trial judge the following day. Thus, the record reflects that, notwithstanding the known evidence of his limited mental capabilities, Sullivan (a) was aware of the nature and the elements of the charges against him; (b) was aware of the implications of pleading guilty to those charges; and (c) knowingly and voluntarily entered pleas of guilty after consulting with his attorneys and his family. Sullivan has failed to demonstrate plain error regarding the entry and acceptance of his guilty pleas.

### Striking Jurors For Cause Death Penalty Reservations

■ Sullivan contends that the striking of four jurors for cause violated his constitutional right to a jury constituting a "fair cross-section of his peers" and neutrally drawn to represent the "conscience of the community." *See generally Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Four jurors were stricken from the venire panel for cause, after they had expressed personal reservations about the imposition of a sentence of death. Under the Delaware death penalty statute the jury

renders an advisory opinion which is not binding upon the trial court in arriving at its sentencing decision. 11 *Del.C.* § 4209(d). *See Wright v. State*, Del.Supr., 633 A.2d 329, 335, 338–39 (1993). Sullivan argues that for this reason the striking of the four venire-members for cause was not mandated by the United States Constitution, as interpreted by the United States Supreme Court in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

This Court rejected an identical argument in *State v. Cohen*, Del.Supr., 604 A.2d 846, 855–56 (1992):

> Although not the final arbiters of punishment, jurors still play a vital and important role in the sentencing procedure. The jury sits as the conscience of the community in deciding whether to recommend life imprisonment or the death penalty. Any personal views which would prevent its members from impartially performing this solemn responsibility in accordance with the trial court's instructions are impermissible and contrary to law.

*Id.* at 856 (citation omitted). *See also Sanders v. State*, Del.Supr., 585 A.2d 117, 133 (1990) (quoting *Witherspoon v. Illinois*, 391 U.S. at 519, 88 S.Ct. at 1775); *DeShields v. State*, Del.Supr., 534 A.2d 630, 634 (1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988). Sullivan has presented no basis for this Court to revisit its holding in *Cohen* on this same issue.

In Sullivan's case, the Superior Court found that each of the four stricken venire-member's views would have "prevent[ed] or substantially impair[ed] the performance of his [or her] duties as a juror in accordance with [its] instructions and his [or her] oath." *Wainwright v. Witt*, 469 U.S. at 424, 105 S.Ct. at 852 (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)). *See DeShields v. State*, 534 A.2d at 634. Sullivan does not argue in this appeal that the Superior Court judge abused his discretion in his factual determination that the striking of each veniremember satisfied the standard articulated in *Wainwright*. *See Murphy v. State*, 632 A.2d 1150, 1152 (1993). Accordingly, the striking of these four jurors for cause was proper and pro-

vides no basis for a reversal of Sullivan's sentence of death.

### Victim Impact Evidence

■ Sullivan contends that this Court should set aside his sentence of death because the "victim impact" evidence presented by the State violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Sullivan did not object to this evidence when it was presented. Having failed to object to the victim impact evidence at the penalty hearing, Sullivan has waived the right to challenge it on appeal unless he can demonstrate plain error, i.e., the plain violation of a fundamental right. Supr.Ct.R. 8; D.R.E. 103(d); *Red Dog v. State*, Del.Supr., 616 A.2d 298, 310 (1992).

■ The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment does not bar a State from permitting prosecutors to present "victim impact" evidence during a penalty hearing, because "just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Payne v. Tennessee*, 501 U.S. ——, ——, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991) (quoting *Booth v. Maryland*, 482 U.S. 496, 517, 107 S.Ct. 2529, 2540, 96 L.Ed.2d 440 (1987) (White, J., dissenting)). Subsequent to *Payne*, this Court has held that the Delaware death penalty statute affords the State the right to present "victim impact" evidence. *Petition of State of Delaware*, Del.Supr., 597 A.2d 1, 3 (1991). We noted, however, that "[i]f, in a particular case, a witness's testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment." *Id.* (quoting *Payne v. Tennessee*, 501 U.S. at ——, 111 S.Ct. at 2612 (O'Connor, J., concurring)).

■ Sullivan argues that the State elicited testimony from Dodd's neighbor, Ned Goodwin ("Goodwin"), that had such an impermissible effect. Goodwin testified that

after the murder, he and his family began locking their doors. Before the murder they had not often done so because Dodd "would always keep an eye on the house." Goodwin also testified that his wife had learned how to use a handgun to protect herself after Dodd's death. Sullivan contends that such testimony was irrelevant to the statutory issues and unfair because it tended to suggest to jurors that their own lives and their own families' safety may have been personally endangered as a result of Sullivan's crimes.

The record reflects that in summarizing the effect of the State's "victim impact" evidence in its entirety upon the jury, the Superior Court judge found that it showed Dodd to be "a generous, humble, and gracious man who will be missed by his friends, neighbors, and family." The loss experienced by Dodd's neighbors, Goodwin and his wife, was just one of many impacts. Moreover, the Superior Court judge expressly stated that he did not attach "undue weight" to the victim impact evidence in arriving at his sentencing decision.

We have carefully reviewed the record of Goodwin's testimony, in the context of all the "victim impact" evidence presented at the penalty hearing. That testimony was limited in scope. It was not mentioned during the State's closing argument. We have concluded that its admission did not constitute plain error. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *Petition of State of Delaware*, Del.Supr., 597 A.2d 1 (1991).

### Remarks by Prosecution

Sullivan contends that the State deprived him of a fair penalty hearing by making improper statements in its closing and rebuttal arguments before the jury. Sullivan's claims of error are based upon the prejudice he attributes to four categories of remarks. Once again, these are contentions which Sullivan did not present to the Superior Court. Therefore, Sullivan must demonstrate plain

error. *See Walls v. State*, Del.Supr., 560 A.2d 1038, 1049 (1989); *Michael v. State*, Del.Supr., 529 A.2d 752, 762 (1987).

Sullivan contends that the prosecutor encouraged the jury to minimize the consequences of its sentencing recommendation by advising the jury that the trial judge would ultimately decide the appropriate penalty.[4] The United States Supreme Court has held that the prosecution may not mislead a jury about its role in the sentencing process so as to "minimize the jury's sense of responsibility for determining the appropriateness of death." *Caldwell v. Mississippi*, 472 U.S. 320, 341, 105 S.Ct. 2633, 2646, 86 L.Ed.2d 231 (1985). In *Caldwell*, the Court stated:

> [I]t is constitutionally impermissible to rest a death sentence on a determination by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.
>
> . . . . .
>
> In the capital sentencing context there are specific reasons to fear substantial unreliability as well as bias in favor of death sentences when there are state-induced suggestions that the sentencing jury may shift its sense of responsibility to an appellate court.

*Id.* at 328–30, 105 S.Ct. at 2639–40, *quoted in Riley v. State*, Del.Supr., 496 A.2d 997, 1025 (1985), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

The Mississippi death penalty statute at issue in *Caldwell* provided that "[i]f the jury does not make the findings requiring the death sentence," or "[i]f the jury cannot, within a reasonable time, agree as to punishment," the trial court was obligated to impose a sentence of life imprisonment. *Id.* 472 U.S. at 332 n. 3, 105 S.Ct. at 2641 n. 3 (quoting Miss.Code Ann. §§ 99–19–101(3)(c), 99–19–103). Thus, the decision made by the jury was binding on the Mississippi trial court to the extent it failed to reach agreement on a death sentence. Conversely, if the

---

4. In closing, the prosecutor advised the jury that it should recommend to the judge, who had the "ultimate decision," that Sullivan should be sentenced to death. In rebuttal, the prosecutor also stated: "When you go back and view the evidence, take your time. Go back to the jury room. Don't be concerned with Monday morning quarterbacking as [defense counsel] asked you not to do because [the judge] has the ultimate decision."

jury recommended a sentence of death, the Mississippi trial court was required to enter such a sentence subject only to appellate review for errors of law. *See id.*[5]

■ *Caldwell* is distinguishable from the facts of the case *sub judice,* because "[i]n no sense may it reasonably be said that the prosecutor was either misstating the law, misleading the jury as to its role, or minimizing its sentencing responsibility." *Riley v. State,* 496 A.2d at 1025. Unlike *Caldwell,* in the present case the State's remarks in closing and rebuttal accurately characterized the role of the jury under the applicable law. Pursuant to the *present* Delaware death penalty statute, the ultimate decision concerning the imposition of a sentence of death is now vested in the trial judge "after considering the recommendation of the jury." 11 *Del.C.* § 4209(d)(1). The jury is an advisor to the trial court. Consequently, after a careful review of the record, we have concluded that the prosecutor's remarks concerning the judge's "ultimate decision" on a sentence of death did not constitute plain error.

The second remark on which Sullivan bases his plain error claim was made by the prosecution during its rebuttal:

[Defense counsel] told you he was degrading himself. He was begging, begging you to spare his client's life. Unfortunately, ladies and gentlemen, Maurice Dodd didn't have an activist like [defense counsel] to plead for his life on December 27th of last year.

. . . . .

No one can beg for Maurice Dodd's life today. It is an impossibility. He has been dead for almost a year. All we can do today, ladies and gentlemen, is impose a just sentence on Willie Sullivan.

Sullivan contends that the foregoing statements by the prosecutor were an impermissible "golden rule" argument.

■ The "golden rule" doctrine precludes an attorney from asking the jurors to put themselves in the place of a victim. *See Delaware Olds, Inc. v. Dixon,* Del.Supr., 367 A.2d 178, 179 (1976). In support of his argument, Sullivan cites *Bertolotti v. State,* Fla. Supr., 476 So.2d 130 (1985). In *Bertolotti,* the prosecutor urged the jurors to imagine the victim's final torment during the murder committed by the defendant. *Id.* at 133.

■ The prohibition against "golden rule" arguments was not implicated by the prosecutor's statements which are challenged by Sullivan in this case. The prosecutor did not ask the jury to put themselves in the place of the victim, Dodd. Therefore, those comments by the prosecutor did not constitute plain error.

Third, Sullivan argues that the prosecutor improperly interjected his own personal experience and opinion into its rebuttal. In attempting to refute the arguments made by defense counsel concerning Sullivan's mental retardation, the prosecutor recounted testimony by Sullivan's witnesses about his ability to repair appliances and then stated: "Ladies and gentlemen, *I can't even set the time on my VCR.* It is still blinking 12:00 o'clock. *I can't set my VCR to record a program tomorrow or next week or whatever*" (emphasis added). Shortly thereafter, the prosecutor prefaced an observation about the testimony of Sullivan's expert witness, Irwin G. Weintraub, Ph.D. ("Dr. Weintraub"), concerning Sullivan's mental retardation with the phrase "[t]he thing that got to *me* " (emphasis added). The prosecutor concluded the observation by remarking "[c]ome on, ladies and

**5.** The reversal in *Caldwell* was predicated upon the prosecution's *erroneous* yet "unambiguous" characterization of the role of the jury in capital sentencing procedures: specifically, the prosecutor stated to the jury that "your job is reviewable," that "your decision is not the final decision," and that "the decision you render is automatically reviewable by the Supreme Court." *Id.* at 325, 105 S.Ct. at 2637; *Riley v. State,* 496 A.2d at 1025. In *Caldwell,* the accurate characterization of the role of the jury under Mississippi law would have been as a "decisionmaker," with

the appellate court functioning *only* as a "reviewer." *See Caldwell v. Mississippi,* 472 U.S. at 330–32 & n. 3, 105 S.Ct. at 2640–41 & n. 3; *Riley v. State,* 496 A.2d at 1025. Consequently, in *Caldwell,* the United States Supreme Court held that the prosecutor had misled the jury by asserting to its members that "your decision is not the final *decision* " merely because their *sentencing decision* (as opposed to a *recommendation* ) was subject to judicial review. *See Caldwell v. Mississippi,* 472 U.S. at 325, 105 S.Ct. at 2637 (emphasis added).

gentlemen." Sullivan contends that these latter comments constituted improper expressions of personal opinion regarding the credibility of the defense expert's testimony and the creditworthiness of the defense arguments based upon that testimony. *See Brokenbrough v. State,* Del.Supr., 522 A.2d 851, 859 (1987).

It is well-established that arguments based upon an attorney's personal beliefs or knowledge are impermissible. *Id.* The State acknowledges on appeal that the personal arguments by the prosecutor were improper. To establish plain error, however, Sullivan has the burden of showing that the improper arguments by the prosecutor "not only created the possibility of prejudice, but that the errors worked to his actual substantial disadvantage." *Saunders v. State,* Del. Supr., 602 A.2d 623, 625 (1984).

After a careful review of the record of the penalty hearing, we have determined that Sullivan was not substantially disadvantaged, given the centrality of the issues, the nature of the prosecutor's comments, and the strength of the contrary evidence presented by Sullivan. *See Hughes v. State,* Del.Supr., 437 A.2d 559, 571–72 (1981). The usages of the first-person pronouns were isolated. Those which were made regarding Dr. Weintraub did not imply that the prosecutor possessed superior knowledge concerning Dr. Weintraub's credibility beyond that which was logically inferable from the evidence. *See Saunders v. State,* 602 A.2d at 624.

Finally, Sullivan argues that the prosecution engaged in improper argument in rebuttal when it asserted that "[t]his is a capital case because it deserves to be a capital case." The State contends that this statement was merely a reply to allegations by Sullivan's counsel during his closing argument to the effect that Sullivan is "the person that the State *wants* to execute. That's the person the State *wants* you to be the instrumentality for executing ..." (emphasis added). These statements, the State contends, amounted to accusations of selective and subjective application of the death penalty by the State, which called for a response.

It is well-established that during closing arguments although a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). *Accord Hughes v. State,* 437 A.2d at 567. Therefore, an improper response by a prosecutor cannot be excused as "invited" by argument from defense counsel. *Michael v. State,* 529 A.2d at 764. The proper response to an improper argument is a timely objection. *Id.*

Once again, Sullivan has not demonstrated that the prosecutor's comments constituted plain error. It is improper for the prosecution to imply that the State has already made a careful decision that a particular defendant deserves the death penalty. *Compare Brokenbrough v. State,* 522 A.2d at 857; *Hughes v. State,* 437 A.2d at 573. *See Brooks v. Kemp,* 762 F.2d 1383, 1410 (11th Cir.1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). However, just as the argument by Sullivan's attorney was proper, so too was the prosecutor's argument that the *evidence* of Dodd's murder satisfied the statutory definition of an appropriate capital case. The record also reflects that, in other contexts, the prosecution reminded the jury that it was charged with the obligation to decide for itself whether to recommend a sentence of death for Sullivan. *See Brooks v. Kemp,* 762 F.2d at 1414. Consequently, Sullivan has not demonstrated that the prosecutor's comments constituted plain error.

### Jury Instructions
### Mitigating Evidence of Limited Mental Capacity

Sullivan contends that the instructions given to the jury during the penalty phase of his trial were insufficient with respect to the issue of mitigating circumstances. The Superior Court broadly defined a mitigating circumstance as *"any* factor which tends to make the defendant's conduct less serious or the imposition of a penalty of death inappropriate"[6] (emphasis added). According to

---

6. The jury instructions used at Sullivan's penalty

hearing were patterned after those approved by

Sullivan, the Superior Court should have *specifically* instructed the jury that his alleged mental retardation could be considered by it to be a mitigating circumstance.

Sullivan did not request a specific instruction with respect to his alleged mental retardation as a mitigating circumstance before or during the prayer conference in the Superior Court.[7] Sullivan made no objection to the instruction regarding mitigating circumstances as it was actually given to the jury. In the absence of an objection, the standard of appellate review is plain error. *Sanders v. State*, Del.Supr., 585 A.2d 117, 132–33 (1990). *See* Supr.Ct.R. 8.

> Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.

*Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (citation omitted), *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

This Court recently held, in a similar context, that "[b]ecause the error alleged ... relates to the deficiency of instructions in the penalty phase of a capital murder trial, any such error would be of constitutional dimension. In view of the resulting imposition of the death sentence, any such error would clearly be fundamental in character and deprive the defendant of a substantial right." *Wright v. State*, Del.Supr., 633 A.2d 329, 336 (1993). *See also Stringer v. Black*, — U.S. —, — – —, 112 S.Ct. 1130, 1136–37, 117 L.Ed.2d 367 (1992); *Penry v. Lynaugh*, 492 U.S. 302, 322–28, 109 S.Ct. 2934, 2948–51, 106 L.Ed.2d 256 (1989). Accordingly, we will also examine Sullivan's claim pursuant to the plain error standard of appellate review. *Wright v. State*, 633 A.2d at 336; *Sanders v. State*, 585 A.2d at 133.

 Sullivan's challenge to the Superior Court's jury instruction is based upon the Eighth and Fourteenth Amendments to the United States Constitution.[8] *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Sullivan argues that his death sentence constitutes cruel and unusual punishment because the Superior Court failed to give a specific jury instruction concerning his alleged mental retardation as a mitigating circumstance, when Sullivan had presented evidence sufficient to support such an instruction. *See id.; Sanders v. State*, Del.Supr., 585 A.2d 117 (1990).

This Court recently reviewed the decisions, including *Penry* and *Sanders*, which are relevant to an understanding of the state and federal constitutional standards which must be satisfied before the ultimate sentence of death can be imposed. *Wright v. State*, 633 A.2d at 335–39. In *Penry*, the United States Supreme Court concluded that the Texas statutory death penalty scheme did not allow for sufficient consideration by the jury of the defendant's undisputed evidence of mental retardation as a mitigating circumstance.

---

this Court in *Flamer v. State*, Del.Supr., 490 A.2d 104 (1983), *cert. denied*, 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), *and cert. denied*, 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985), and *Riley v. State*, Del.Supr., 585 A.2d 719 (1990), *cert. denied*, — U.S. —, 111 S.Ct. 2840, 115 L.Ed.2d 1008 (1991). *See Riley v. State*, 585 A.2d at 730–36 (approved instructions). The only significant modifications were the result of the 1991 amendments to the Delaware death penalty statute. 11 *Del.C.* § 4209.

7. The following exchange occurred during the prayer conference:

> THE COURT: Counsel, I wanted to meet with you preliminarily to address a matter of jury instructions. This conference is all sub-ject to such follow-up conferences and requests as may be appropriate given the fact all the evidence may not be in as of yet.
>
> Does the State contemplate any special requests?
>
> [PROSECUTOR]: No, Your Honor.
>
> THE COURT: Does the defendant?
>
> [DEFENSE COUNSEL]: No, Your Honor.

8. Delaware's present death penalty statute, although otherwise modeled after Florida's statute in many respects, does not enumerate statutory mitigating circumstances about which the jury must be specifically instructed. *See* 11 *Del.C.* § 4209. *Compare* 47 Fla.Stat.Ann. § 921.141(6).

*Penry v. Lynaugh,* 492 U.S. at 318–19, 109 S.Ct. at 2946–47. *See Wright v. State,* 633 A.2d at 337. The Texas death penalty statute, which was reviewed in *Penry,* required the jury to answer three "special issues":

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

*Penry v. Lynaugh,* 492 U.S. at 310, 109 S.Ct. at 2942. If the jury responded to these three questions in the affirmative, the trial court was obligated to impose a sentence of death. Otherwise, the defendant would be sentenced to life imprisonment. *Id.*

Pursuant to the Texas statute, any mitigating evidence must be considered exclusively within the context of the three special issues which are that statute's focus. In *Penry,* the Court held that because the Texas statutory issues provided no genuine opportunity for the jury to give mitigating effect to the petitioner's evidence of mental retardation and childhood abuse, a special instruction was constitutionally mandated. *Id.* at 318–19, 109 S.Ct. at 2946–47.[9] Thus, the requirement for a specific instruction in *Penry* was predicated upon the conclusion that the inquiries to which the three special issues in the Texas statute directed the jury (deliberateness, future dangerousness, and provocation) did not provide the jury with a vehicle for expressing a "reasoned moral response" to the particular mitigating evidence of the defendant's mental retardation and childhood abuse. *Id.*

at 320–25, 109 S.Ct. at 2947–50. *Compare Johnson v. Texas,* —— U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993).

██ The Delaware capital punishment statute is significantly different than the Texas statutory scheme, which was found to be defective in *Penry,* with regard to the consideration of mitigating circumstances. Pursuant to the present Delaware statute, as revised in 1991, a sentence of death may be imposed only under the two-step procedure prescribed by 11 *Del.C.* § 4209. *See Wright v. State,* 633 A.2d at 335. First, the Delaware statute requires the jury to determine, during the penalty phase, (1) whether the evidence shows beyond a reasonable doubt the existence of at least one statutory aggravating circumstance and (2) whether, by a preponderance of the evidence, the aggravating circumstances outweigh *any mitigating circumstances* found to exist. 11 *Del.C.* § 4209(c)(3); *Wright v. State,* 633 A.2d at 335. The second step requires the trial judge, taking into consideration the recommendation of the jury, to answer the same questions. 11 *Del.C.* § 4209(d).

██ Pursuant to the Delaware statute, if the trial judge concludes that the answers to both questions are in the affirmative, he or she must impose a sentence of death; otherwise, a sentence of life imprisonment without the possibility of probation, parole, or other reduction in sentence must be imposed. *Id. See Wright v. State,* 633 A.2d at 335. Consequently, under the present Delaware capital punishment statute, the trial judge of the Superior Court bears the ultimate responsibility for imposition of the death sentence. The jury acts in an advisory capacity "as the conscience of the community." *See Wright v. State,* 633 A.2d at 335 (quoting *State v. Cohen,* Del.Supr., 604 A.2d 846, 856 (1992)).[10]

---

**9.** The petitioner in *Penry* had presented evidence of his mental retardation and childhood abuse. He argued that the jury instructions, which simply explained the burden of proof and that the jury could consider all evidence submitted during the guilt and penalty phase in answering the three questions, did not sufficiently provide for consideration by the jury of his mental retardation and childhood abuse as mitigating circumstances. The petitioner in *Penry* argued that

such evidence was relevant to his moral culpability "beyond the scope" of the statutory "special issues." *Id.* 492 U.S. at 322, 109 S.Ct. at 2948.

**10.** In *Wright v. State,* this Court noted that "[w]e are mindful of the fact that a constitutional defect in the jury instructions would require the death sentence to be vacated, notwithstanding the fact that the trial judge is vested with the ultimate responsibility for imposition of a death

In Sullivan's case, the record reflects not only that the jury was properly instructed in accordance with the provisions of the Delaware statute, but also that the following special interrogatories were submitted to the jury:

1. Does the evidence show beyond a reasonable doubt the existence of the following statutory aggravating circumstance?

> The murder was committed while the defendant was engaged in the commission of Robbery.

Yes_____

(Place the number of jurors answering in the affirmative here.)

No_____

(Place the number of jurors answering in the negative here.)

2. Does the evidence show beyond a reasonable doubt the existence of the following statutory aggravating circumstance?

> The murder was committed while the defendant was engaged in the commission of Burglary.

Yes_____

(Place the number of jurors answering in the affirmative here.)

No_____

(Place the number of jurors answering in the negative here.)

3. Does the jury find by a preponderance of the evidence, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist?

Yes_____

(Place the number of jurors answering in the affirmative here.)

No_____

(Place the number of jurors answering in the negative here.)

---

In the context of the proceedings in Sullivan's case, if the jury was convinced of Sullivan's mental retardation, mitigating effect could have been given to that evidence by the jurors individually or collectively, pursuant to the instructions and interrogatories given by the Superior Court. Therefore, the mitigating evidence of Sullivan's limited mental capacity, whether or not it amounted to mental retardation, was "within the effective reach" of the jury, as mandated by the holding in *Penry*. *See Graham v. Collins*, —— U.S. ——, ———— ——, 113 S.Ct. 892, 901–02, 122 L.Ed.2d 260 (1993) (citing *Penry v. Lynaugh*, 492 U.S. at 328, 109 S.Ct. at 2951). *See generally Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). In fact, the record reflects that although all twelve jurors answered the first two interrogatories affirmatively, three jurors responded "no" to the third question.

The trial judge had the same opportunity to consider evidence of Sullivan's alleged mental retardation as a mitigating circumstance, pursuant to part two of Delaware's statutory scheme for capital punishment. While rejecting the proposition that Sullivan was "mildly mentally retarded," the Superior Court judge expressly stated in his sentencing opinion that "Sullivan does have limited intelligence and reasoning powers which are mitigating circumstances that will be considered by this Court." Thus, the record reflects that when the trial judge announced Sullivan's death sentence, Sullivan's limited mental capacity was acknowledged, in fact, to be a mitigating circumstance.

▆▆▆ Consequently, Sullivan's reliance upon *Penry* is misplaced. The Delaware statute does not have the effect of placing evidence of alleged mental retardation "beyond the scope" of either the judge's or the jury's consideration. *Compare Penry v. Ly-*

sentence." 633 A.2d at 338–39 (citing *Espinosa v. Florida*, —— U.S. ——, 112 S.Ct. 2926, 120

L.Ed.2d 854 (1992)).

*naugh,* 492 U.S. at 322, 109 S.Ct. at 2948. The Delaware death penalty statute requires the jury and the judge to determine the existence of any statutory aggravating circumstances and then to weigh *"all* relevant evidence in aggravation or mitigation which bear upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender." 11 *Del.C.* § 4209(c)(3)a.2 (emphasis added). In this case, Sullivan's alleged mental retardation was clearly subject to consideration as a factor in mitigation by "both jury and judge." *See Wright v. State,* 633 A.2d at 339. *Compare Penry v. Lynaugh,* 492 U.S. at 327–28, 109 S.Ct. at 2951; *Johnson v. Texas,* —— U.S. at ——, 113 S.Ct. at 2669.

This Court's recent decision in *Wright* demonstrates that Sullivan's reliance on *Sanders* is also misplaced. *See Wright v. State,* 633 A.2d at 338 n. 18; *Sanders v. State,* Del.Supr., 585 A.2d 117 (1990). Sullivan argues that if the jury, in its penalty deliberations, after hearing the relevant evidence, could have found the functional equivalent of a basis for a "guilty, but mentally ill" guilty plea or a basis for the same factual finding by verdict after the guilt phase of the proceedings, the jury should have been instructed by the trial court that a finding of mental retardation or limited mental capacity establishes mitigation as a matter of law. *See Sanders v. State,* 585 A.2d at 134. Sullivan's argument is not supported by this Court's holding in *Sanders.*

In *Sanders,* as part of a bifurcated trial, the jury initially found the defendant, who was charged with Murder in the First Degree, to be guilty but mentally ill, and then unanimously recommended that he be sentenced to death. This Court vacated the death sentence, holding that in order for the jury to properly perform its sentencing function, specific jury instructions were required to explain the significance of the verdict of guilty but mentally ill, which establishes a mitigating circumstance *as a matter of law. Id.* at 134. In *Wright,* this Court explained that the law has long held the mentally ill to a different set of standards, and that tradition was the underlying rationale of the *Sanders* decision. *See Wright v. State,* 633

A.2d at 338 n. 18 (citing *Sanders v. State,* 585 A.2d at 136–38).

▮ Sullivan did not enter any pleas of guilty but mentally ill. Sullivan entered pleas of *guilty.* Consequently, the risk of jury confusion that was the basis for the mandatory specific instruction regarding mitigating evidence in *Sanders* was entirely absent from Sullivan's penalty hearing. Since the jury was never required to return any verdict on Sullivan's guilt or innocence, there were no instructions during the initial (guilt) phase of his bifurcated proceedings that could cause *any* jury confusion. We conclude in Sullivan's case, as this Court held in *Wright,* that there is no reason to extend *Sanders* beyond its extraordinary facts. *Wright v. State,* 633 A.2d at 338 n. 18.

In summary, there are no state or federal constitutional principles which mandated that the Superior Court include a specific jury instruction with regard to the consideration of Sullivan's alleged mental retardation as a mitigating circumstance. *Penry v. Lynaugh,* 492 U.S. at 328, 109 S.Ct. at 2951; *Sanders v. State,* 585 A.2d at 133–34. *See also Wright v. State,* 633 A.2d at 338–39. *Accord Flamer v. State,* Del.Supr., 490 A.2d 104, 128, 151 (1983) (penalty phase instructions sufficient even though "low mentality" of defendant was advanced as mitigating circumstance), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), *and cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985). Since the Delaware law explicitly permits consideration of any mitigating evidence without the constraint of the Texas statute's special issues format, Sullivan's case is clearly distinguishable from *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

The mitigating evidence of Sullivan's alleged mental retardation was "within the effective reach of the *sentencer,"* the Superior Court judge, as well as the advisory jury, pursuant to the Delaware death penalty statute. *See Johnson v. Texas,* —— U.S. at ——, 113 S.Ct. at 2669 (emphasis added) (quoting *Graham v. Collins,* —— U.S. at ——, 113 S.Ct. at 901–02). *Compare Penry v. Lynaugh,* 492 U.S. at 327–28, 109 S.Ct. at 2951. Unlike the unique situation in *Sanders,* Sulli-

van's bifurcated proceedings had no inherent potential for confusing the jury. *Sanders v. State*, 585 A.2d at 133–34. Consequently, we hold that the omission of such a specific instruction to the jury, in the absence of a request for one, did not constitute plain error. *Wright v. State*, 633 A.2d at 338–39.

### Mental Retardation
### Findings of Fact

Finally, Sullivan challenges the Superior Court judge's factual finding, announced in his sentencing decision, that Sullivan is not "mildly mentally retarded." The Superior Court judge's conclusion that Sullivan is not mentally retarded is a finding of fact. This Court will not set such a finding aside if it was supported by competent evidence. *See Marine v. State*, Del.Supr., 624 A.2d 1181, 1188 (1993); *Flamer v. State*, Del.Supr., 585 A.2d 736, 754 (1990); *State v. Rooks*, Del. Supr., 401 A.2d 943, 949 (1979).

The Superior Court judge made the following findings with regard to Sullivan's alleged mental retardation:

Concerning Sullivan's alleged psychological/intellectual problems, the Court finds from the testimony that the defendant does not suffer from any mental illness. He functions within the middle of the low-average range of general intelligence. Sullivan was promoted throughout school without passing any grade except the second grade. His reading, spelling, and arithmetic abilities were shown by tests to be at the elementary school level. He is able to perform manual and mechanical skills well. He is able to distinguish between right and wrong. He knew it was wrong to kill Mr. Dodd and yet he freely formed the idea and ultimately carried out his plan to lure Mr. Dodd from his residence for the purpose of killing him by surprise with his mother's kitchen knife. *Contrary to the opinion of Irwin G. Weintraub, Ph.D., the Court does not find Sullivan to be "mildly mentally retarded."* His full scale intelligence quotient was determined by Dr. Weintraub to be 75 which is above the DSM–III–R range of 50 to 70 for mild mental retardation. Although DSM–III–R permits a psychologist to render an opinion of mild mental retardation notwithstanding a score above the range for this category, the Court is not persuaded that Dr. Weintraub's conclusion to that effect should be accepted given the totality of the evidence which has been presented regarding the defendant's background and his abilities. The Court accepts the psychoeducational appraisals and psychological tests conducted by the Caesar Rodney School District from 1979 through 1986 which indicate that Sullivan functions within the middle of the borderline range of general intellectual development. These appraisals do not reveal mental retardation or personality disorders. *Sullivan does have limited intelligence and reasoning powers which are mitigating circumstances that will be considered by the Court* [emphasis added].

The record reflects that the generally accepted intelligence quotient ("IQ") of a person classified as "mildly mentally retarded" is in the range of 50 to 70. School psychological tests administered in 1979, 1981, and 1986 did not reveal evidence of mild mental retardation. In fact, the 1986 report indicated that Sullivan's basic skill levels, although below the first percentile, "represent significant underachievement relative to his age and learning ability." Sullivan's expert witness, Dr. Weintraub, who admitted that he was unaware of those tests when he prepared his report for trial, relied heavily on Sullivan's lack of basic academic skills in forming his opinion. Dr. Weintraub opined that, despite Sullivan's full-scale IQ of 75, Sullivan was mildly mentally retarded because his score was elevated to 75 only by his score of 83 for dexterity in manual and mechanical skills. The Superior Court rejected this factual conclusion.

The record reflects that the Superior Court's finding that Sullivan is not mentally retarded was supported by competent evidence. A trial judge, sitting as finder of fact, may reject an expert opinion concerning the mental competence of a defendant. *See, e.g., Red Dog v. State*, Del.Supr., 616 A.2d 298, 309 n. 15 (1992); *State v. Bailey*, Del.Super., 519 A.2d 132, 138 (1986). *Com-*

*pare State v. Greenway,* 170 Ariz. 155, 823 P.2d 22, 36 (1991). Therefore, the applicable standards of appellate review require this Court to uphold the Superior Court's finding on that issue.

### Section 4209(d)
### Qualitative Not Quantitative Weighing Aggravating and Mitigating Circumstances

Sullivan argues that, under the facts of the case *sub judice,* unless the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt, and unless a sentence of death was an appropriate punishment under the totality of the circumstances, a sentence of death constitutes cruel and unusual punishment. On these grounds, Sullivan contends that the Delaware death penalty statute violates the Eighth Amendment to the United States Constitution. *See* U.S. Const. amend. VIII; 11 *Del.C.* § 4209(d). This Court recently considered and rejected identical arguments, albeit on statutory grounds, in *State v. Cohen,* Del. Supr., 604 A.2d 846, 849–51 (1992).

The "totality of the circumstances" argument made in *Cohen* was based primarily upon principles of statutory construction, and did not directly implicate constitutional questions. *See State v. Cohen,* 604 A.2d at 849–50 & n. 2. Nevertheless, in analyzing the proper standard of proof with regard to the statutory requirement for the balancing of aggravating and mitigating circumstances, this Court's holding in *Cohen* was based upon precedents of the United States Supreme Court. *See id.* at 851. *See also Walton v. Arizona,* 497 U.S. 639, 650–51, 110 S.Ct. 3047, 3055–56, 111 L.Ed.2d 511 (1990) (plurality opinion) (citing *Mills v. Maryland,* 486 U.S. 367, 387, 108 S.Ct. 1860, 1871, 100 L.Ed.2d 384 (1988)); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Sullivan has asserted no persuasive constitutional basis to reconsider our holding in *Cohen.*

In *Cohen,* this Court noted that the weighing of aggravating and mitigating circumstances, pursuant to Section 4209(d), involves a "qualitative" rather than a "quantitative"

consideration of the circumstances to determine the appropriate punishment. *State v. Cohen,* 604 A.2d at 849. This Court concluded that any relevant factor in a totality of the circumstances analysis would also be weighed as either a mitigating or aggravating factor under the present Delaware death penalty statute. *Id.* Therefore, in *Cohen,* we concluded that any distinct totality of the circumstances analysis would be redundant. *Id.* Accordingly, for the same reasons, we now hold that Sullivan's contention that the application of Section 4209(d) violates the Eighth Amendment is without merit.

### Death Penalty
### Statutorily Mandated Review

Under Delaware's death penalty statute, a sentence of death may be imposed only under the bifurcated procedure prescribed by 11 *Del.C.* § 4209. Although the review by this Court which the statute mandates is limited, that review is not perfunctory. *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1375 (1992). *See Dobbert v. Florida,* 432 U.S. 282, 295, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977). Section 4209(g)(2) provides as follows:

> (2) The Supreme Court shall limit its review under this section to the recommendation on an imposition of the penalty of death and shall determine:
>
> a. Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.
>
> b. Whether the evidence supports the judge's finding of a statutory aggravating circumstance as enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)–(7) of this title.

11 *Del.C.* § 4209(g)(2). In performing its mandatory statutory review, this Court is always cognizant that "death as a punishment is unique in its severity and irrevocabil-

ity." *Pennell v. State*, 604 A.2d at 1375 (quoting *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)). *See also Wright v. State*, 633 A.2d 329, 339 (1993); *Red Dog v. State*, Del.Supr., 616 A.2d 298, 306 (1992).

This Court·has traditionally commenced its mandatory statutory review by initially addressing subparagraph (b) of Section 4209(g). *Pennell v. State*, 604 A.2d at 1375. That subsection requires this Court to examine the evidence in the record to determine whether it supports the findings of the Superior Court judge which relate to the establishment of statutory aggravating circumstances. 11 *Del.C.* § 4209(e). Thereafter, two additional inquiries are required by subparagraph (a) of Section 4209(g)(2): first, whether the Superior Court judge's imposition of the death penalty was either arbitrary or capricious; and second, whether the death penalty imposed was disproportionate to the penalty imposed in similar cases arising under this statute. *Pennell v. State*, 604 A.2d at 1375; *Riley v. State*, Del.Supr., 496 A.2d 997, 1026 (1985). "Each question requires a consideration of the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender." 11 *Del.C.* § 4209(g)(2); *Pennell v. State*, 604 A.2d at 1375.

*Wright v. State*, 633 A.2d at 339 (quoting *Red Dog v. State*, 616 A.2d at 306–07). *See generally Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

■ Delaware's death penalty statute requires both the jury and judge to weigh all relevant aggravating and mitigating circumstances. The judge must determine that the aggravating outweigh the mitigating in order to impose a death sentence. 11 *Del.C.* § 4209(c)(3), (d). The record reflects that two statutory aggravating circumstances were established as a matter of law by virtue of Sullivan's pleas of guilty to Robbery in the First Degree and Burglary in the Second Degree. *Compare Pennell v. State*, 604 A.2d at 1375.

■ Additionally, at the penalty hearing, the State introduced into evidence Sullivan's tape recorded confession to the police, in which he admitted taking Dodd's wallet and burglarizing his house. The jury unanimously found that these statutory aggravating circumstances existed beyond a reasonable doubt. *See* 11 *Del.C.* § 4209(c)(3)a.1. Viewed in the light most favorable to the State, the record supports the Superior Court's finding that the State had established the existence of two statutory aggravating circumstances beyond a reasonable doubt. 11 *Del.C.* § 4209(g)(2)b. *See Red Dog v. State*, 616 A.2d at 307; *DeShields v. State*, 534 A.2d 630, 648 (1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988).

*Death Penalty*
*Not Arbitrary or Capricious*

■ In a thirteen-page written opinion, the Superior Court expressed the basis for its decision to sentence Sullivan to death. The Superior Court concluded that the statutory aggravating circumstances, which it found to exist beyond a reasonable doubt, and the non-statutory aggravating circumstances "clearly" outweighed the mitigating circumstances which it found to exist. In concluding his sentencing analysis, the Superior Court judge stated:

This case involves the premeditated, unprovoked, vicious, and brutal murder of a defenseless 78 year old man while the defendant was engaged in the commission of robbery and burglary. A killing during the course of a robbery or burglary becomes egregiously heinous when it is preceded by a substantial period of planning, reflection, and calculation by the killer as occurred here. Sullivan committed this murder in a merciless way with no pretense of moral or legal justification. Although the Court has found several mitigating circumstances, they are clearly outweighed by the aggravating circumstances of this crime and Sullivan's demonstrated propensity to plan and prey upon the elderly and defenseless by killing such a person only for money. In light of the totality of circumstances present, the

Court agrees with the jury's recommendation in this case.

Accordingly, the Court concludes that the defendant's sentence for the Murder in the First Degree of Maurice W. Dodd shall be death by lethal injection.

The record reflects that the Superior Court judge carefully considered the totality of the evidence in aggravation and mitigation, which related to the particular circumstances of the murder of Dodd as well as to the character and propensities of Sullivan. 11 *Del.C.* § 4209(g)(2)a. *See Red Dog v. State*, 616 A.2d at 310; *Pennell v. State*, 604 A.2d at 1375. The record reflects that the Superior Court's decision to impose the death sentence was "the product of a deliberate, rational and logical deductive process." *Red Dog v. State*, 616 A.2d at 310 (citing *Pennell v. State*, 604 A.2d at 1376). After a careful review of the entire record, this Court concludes that the sentence of death was not imposed upon Sullivan by the Superior Court either arbitrarily or capriciously. 11 *Del.C.* § 4209(g)(2)a.

### Death Penalty Proportionality Review

■ The remaining question that this Court must address in our automatic review is whether the Superior Court judge's imposition of the death penalty upon Sullivan was disproportionate to the penalty imposed in other cases arising under the Delaware death penalty statute. 11 *Del.C.* § 4209(g)(2)a. In answering that inquiry, this Court has reviewed the "universe" of cases established in *Flamer, Bailey, Riley, Deputy, DeShields, Dawson, Pennell, Red Dog* and *Wright*, as well as all subsequent cases falling therein. *Wright v. State*, Del.Supr., 633 A.2d 329 (1993); *Red Dog v. State*, Del.Supr., 616 A.2d 298 (1992); *Pennell v. State*, Del.Supr., 604 A.2d 1368 (1992); *Dawson v. State*, Del. Supr., 581 A.2d 1078 (1990), *vacated on other grounds,* —— U.S. ——, 112 S.Ct. 1093, 117

L.Ed.2d 309 (1992); *DeShields v. State*, Del. Supr., 534 A.2d 630 (1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988); *Deputy v. State*, Del.Supr., 500 A.2d 581 (1985), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987); *Riley v. State*, Del.Supr., 496 A.2d 997 (1985), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Bailey v. State*, Del. Supr., 490 A.2d 158 (1983), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), *and cert. denied*, 474 U.S. 873, 106 S.Ct. 195, 88 L.Ed.2d 164 (1985); *Flamer v. State*, Del.Supr., 490 A.2d 104 (1983), *cert. denied*, 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), *and cert. denied*, 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985) (Appendix II).[11] The "universe" of cases is comprised of those First Degree Murder cases which have included a penalty hearing and in which the sentence has become final, either without or following a review by this Court. *See Red Dog v. State*, 616 A.2d at 311.

As this Court has pointed out in prior cases involving proportionality review, "[a] definitive comparison of the 'universe' of cases is almost impossible." *Id.* (citing *Pennell v. State*, 604 A.2d at 1376; *Riley v. State*, 496 A.2d at 1027; *Flamer v. State*, 490 A.2d at 144). *See also DeShields v. State*, 534 A.2d at 649. Nevertheless, we have compared Sullivan's sentence with the penalties imposed in all First Degree Murder cases which have included a death penalty hearing, and have considered objective factors such as the gravity of the offense, the circumstances of the crime, and the harshness of the penalty. *See Red Dog v. State*, 616 A.2d at 311 (citing *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983)).

Like other defendants who have been sentenced to death in Delaware, Sullivan was guilty of "an unprovoked, cold-blooded murder of a helpless person (or persons) committed upon victims lacking the ability to defend

---

**11.** In *Wright v. State,* we noted that the 1991 revisions to the Delaware death penalty statute removed the decisionmaking authority from the jury and placed it in the hands of the sentencing judge. 633 A.2d at 342 n. 21. However, pre–1991 jury decisions are nevertheless pertinent to our proportionality analysis because those cases "reflect a jury consensus on the appropriateness of imposing the death penalty." *Id.* Also, "in all cases in which the death sentence was imposed, this Court conducted proportionality review." *Id.*

themselves and solely for pecuniary gain." [12] See *Riley v. State*, 496 A.2d at 1027. *See also Wright v. State*, 633 A.2d at 343; *DeShields v. State*, 534 A.2d at 649; *Deputy v. State*, 500 A.2d at 602. Thus, this case fits the pattern of other cases in which the death penalty has been imposed, i.e., an execution-type slaying of a helpless victim in cold blood. *See DeShields v. State*, 534 A.2d at 649. Accordingly, the Superior Court judge's imposition of a sentence of death upon Sullivan was not disproportionate to the sentences imposed on other defendants in the relevant "universe" of cases involving death penalty hearings in Delaware. 11 *Del.C.* § 4209(g)(2)a.

### Conclusion

This Court has determined that the facts supporting the sentence of death imposed upon Sullivan by the Superior Court judge for the murder of Maurice Dodd "are so clear and convincing that virtually no reasonable person could differ." *Red Dog v. State*, 616 A.2d at 312 (quoting *Pennell v. State*, 604 A.2d at 1378). The evidence clearly supports the Superior Court judge's finding that two statutory aggravating circumstances were established beyond a reasonable doubt. *See* 11

*Del.C.* § 4209(e), (g)(2)b. This Court has carefully reviewed the entire record and has considered and rejected all claims of error raised by Sullivan in this appeal. We also have concluded that the death sentence imposed upon Sullivan was imposed neither arbitrarily nor capriciously, and it is not comparatively disproportionate to the sentences imposed in other First Degree Murder cases that have proceeded to a penalty hearing pursuant to the Delaware death penalty statute. 11 *Del.C.* § 4209(g)(2)a. *Wright v. State*, 633 A.2d at 343; *Red Dog v. State*, 616 A.2d at 312; *Pennell v. State*, 604 A.2d at 1378. Accordingly, the judgment of the Superior Court, to sentence Sullivan to death for the murder of Maurice W. Dodd, is **AFFIRMED.**

The matter is remanded to Superior Court for further proceedings in accordance with this opinion. This Court's order of January 3, 1993, staying the execution of Sullivan's death sentence, shall terminate upon the issuance of this Court's mandate. The Clerk of this Court is directed to cause a copy of this opinion to be hand-delivered forthwith to the attorneys for the parties and to the Commissioner of the Department of Correction.

---

**12.** Based upon the evidence presented, the Superior Court judge found that "[t]he victim was a defenseless and elderly man of 78 years who did nothing to provoke the defendant other than to provide the opportunity for Sullivan to learn through employment how vulnerable the victim was."

952

# APPENDIX I
## TRUTH IN SENTENCING GUILTY PLEA FORM

### IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR __KENT__ COUNTY

STATE OF DELAWARE )
V. ) CR. A. NO. __IK 92-01-0192 THRU -0196__
__WILLIE G. SULLIVAN__ ) __IK92-03-0022 &__
) __IK 92-03-0001__

The defendant must answer the following questions in his or her own handwriting.

Date of Birth __7-17-71__ Last grade in school completed __10__

Have you ever been a patient in a mental hospital? __NO__

Are you under the influence of alcohol or drugs at this time? __NO__

Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? __Yes__

Have you been promised anything that is not stated in your written plea agreement? __NO__

Has your attorney, the State or anyone threatened or forced you to enter this plea? __NO__

Do you understand that because you are pleading guilty you will not have a trial and you therefore waive (give up) your constitutional right:

(1) to be presumed innocent until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;

(2) to a speedy and public trial;

(3) to trial by jury;

(4) to hear and question the witnesses against you;

(5) to present evidence in your defense;

(6) to testify or not testify yourself; and,

(7) to appeal to a higher court? → Death __Yes__

| OFFENSE | STATUTORY PENALTY | TIS GUIDELINE |
|---|---|---|
| 1. Murder 1 | Life or Death | Mandatory Natural Life with Possibility of Death |
| 2. Robbery 1 | 2-20 Years | 2-5 Years at II |
| 3. Burglary 2 | 0-8 Years | 0-3 Years at II |
| 4. Theft (F) | 0-2 Years | 0-1 Year at II |

TOTAL CONSECUTIVE MAXIMUM PENALTY:
5. Theft (A) ... 0-1 &/or $0.00 -$300.00 ... 0-6 Months at II & 0-6 Months at III
6. PDWBCF ... 2-20 ... 2-6 Years at V ... 2 Years at V

Do you understand that, if incarcerated, you will not be eligible for parole and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year? __Yes__

Is there a mandatory minimum penalty? __Yes__ If so, what is it? __Life + 4 Years__

Has anyone promised you what your sentence will be? __NO__

Are you on probation or parole? __NO__ (A guilty plea may constitute a violation.)

Do you understand that a guilty plea to a felony will cause you to lose your right to vote, to be a juror, to hold public office, to own or possess a deadly weapon and other civil rights? __Yes__

Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of the result of your guilty plea? __Yes__

__Paul _____ DECEMBER 2, 1992 Willie Sullivan__
 Date Defendant

## APPENDIX II

### FIRST DEGREE MURDER CASES THAT WENT TO PENALTY HEARINGS

1985 to date

Appendix I to *Red Dog v. State*, Del.Supr., 616 A.2d 298, 312–15 (1992) is incorporated herein by reference, subject to the following changes and additions.

Case Name: David F. Dawson *

Case No.: IK86–0024; IK87–01–0841; 0843, 0845

County: New Castle (venue changed)

Sentence: Death—automatic appeal pending

Case Name: Cornelius E. Ferguson *

Case No.: IN91–10–0576, 0578 thru 0581

County: New Castle

Sentence: Death—automatic appeal pending

Case Name: Arthur Govan

Case No.: 92–01–0166

County: New Castle

Sentence: Life Imprisonment

Case Name: Robert W. Jackson, III *

Case No.: IN–92–04–1222 thru 1227; IN92–04–1348 and 1349

County: New Castle

Sentence: Death—automatic appeal pending

Case Name: David J. Lawrie *

Case No.: IK92–08–0179 thru 0185; IK92–09–0148 and 0149

County: Kent

Sentence: Death—automatic appeal pending

Case Name: Frank W. Moore, Jr.

Case No.: 92–09–0001, 0002, 1001, 2001, 3001

County: Sussex

Sentence: Life Imprisonment

Case Name: Jack F. Outten *

Case No.: IN92–01–1144 and 1145

County: New Castle

Sentence: Death—automatic appeal pending

Case Name: James W. Perez

Case No.: IN–93–02–1191 and 1197

County: New Castle

Sentence: Life Imprisonment

Case Name: James Allen Red Dog

Case No.: IN 91–02–1495 to 1503

County: New Castle

Sentence: Death

Case Name: Jose Rodriguez

Case No.: IN93–020–1121

County: New Castle

Sentence: Life Imprisonment

Case Name: Nelson W. Shelton *

Case No.: IN–92–01–1154 and 1155

County: New Castle

Sentence: Death—automatic appeal pending

Case Name: Steven W. Shelton *

Case No.: IN–92–01–1149 and 1150

County: New Castle

Sentence: Death—automatic appeal pending

Case Name: Donald J. Simmons

Case No.: IN92–01–0770 thru 0772; IN92–01–1140 and 1141

County: New Castle

Sentence: Life Imprisonment

Case Name: Willie G. Sullivan *

Case No.: IK–01–0192 thru 0196; IK92–02–0001; IK92–03–0022

County: Kent

Sentence: Death—present proceeding

Case Name: Charles H. Trowbridge

Case No.: IK–91–07–0175, IK–91–06–0032 thru 0034

County: New Castle

Sentence: Life Imprisonment

Case Name: John E. Watson

Case No.: IN–91–09–0020 thru 0025

County: New Castle

Sentence: Life Imprisonment

Case Name: Dwayne Weeks *

Case No.: 92–01–0167

County: New Castle

Sentence: Death—automatic appeal pending

Case Name: Jermaine M. Wright

Case No.: IN91–04–0147 thru 1953

County: New Castle

Sentence: Death

The "universe" of cases is comprised of those First Degree Murder cases which have gone to a penalty hearing and in which the sentence has become final, either without or following a review by this Court. An asterisk marks those capital murder cases which are not included in the defined "universe" of cases.