# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | ID. No. 1009005841 |
| | ) | In and for Kent County |
| v. | ) | |
| | ) | |
| **DEANDRAE THOMAS,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61

Kathleen A. Dickerson, Esquire, Deputy Attorney General, Department of Justice, for the State of Delaware.

Jonathan Layton, Esquire, Wilmington, Delaware for Defendant.

FREUD, Commissioner
March 28, 2018

The Defendant, Deandrae Thomas ("Thomas") pled guilty on January 26, 2012 to one count of Racketeering, 11 *Del. C.* § 1503; one count of Trafficking Cocaine > 100 Grams, 16 *Del. C.* § 4753A; two counts of Trafficking Cocaine 10 - 50G, 16 *Del. C.* § 4753A; one count of Possession of a Firearm by a Person Prohibited ("PFBPP"), 11 *Del. C.* § 1448; one count of Possession of a Firearm During the Commission of a Felony ("PFDCF"), 11 *Del. C.* § 1447A; two counts of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447; one count of Assault in the Second Degree, 11 *Del. C.* § 612; one count of Reckless

Endangering in the First Degree, 11 *Del. C.* § 604; one count of Resisting Arrest 11 *Del. C.* § 1257; and one count of Failure to stop for a Police Signal, 21 *Del. C.* § 4103. Thomas was also facing an additional eighty-seven counts including multiple counts of Drug Dealing, Trafficking, Robbery, Attempted Murder and weapons charges. *Nolle prosequis* were entered on the remaining charges in exchange for Thomas' guilty plea. The parties agreed to a presentence office investigation at Thomas' insistence. Had Thomas gone to trial and been found guilty of each of the charges, he faced a minimum mandatory sentence of 62 years in jail up to life incarceration. On March 29, 2012 this Court sentenced Thomas to a total of 58 years incarceration, suspended after serving 37 years, for probation. Thomas filed an appeal to the State Supreme Court in which he argued his twelve year sentence for Racketeering violated the Delaware Constitution prohibition against cruel and unusual punishment. Thomas also argued his counsel had been ineffective. The Delaware Supreme Court found no merit in Thomas' sentencing argument and affirmed his conviction and sentence. The Court did not address Thomas' claim of ineffective assistance of counsel.[1] On September 26, 2013, Thomas filed a motion requesting to file a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 and he also requested the appointment of counsel. The Court granted the request to appoint counsel. Alexander M. Funk, Esquire was initially appointed to represent Thomas however was unable to continue the representation. Substitute counsel, Jonathan Layton, Esquire ("Appointed Counsel") was appointed

---

[1] *Thomas v. State*, 2012 WL 5499649 (Del.).

2

on December 21, 2015. Appointed Counsel filed the pending Motion for Postconviction Relief on behalf of Thomas on October 3, 2016 alleging ineffective assistance of Trial Counsel.

## FACTS

As set forth in the State's Response to the motion for postconviction relief and documented in the State's Appendix, in 2009 the Delaware State Police began an investigation into a drug trafficking ring in Kent County, Delaware. The investigation identified a number of participants including Marquinn Bordley ("Bordley"), William Loper ("Loper") and Thomas. Law enforcement recorded the investigation in police reports (Exhibit D).[2] In furtherance of the investigation Detective Jeremiah Lloyd engaged in four separate hand-to-hand transactions of illicit drugs, primarily crack cocaine, with Thomas. As a result of these drug deals, law enforcement obtained Thomas' phone number and obtained a court ordered Pen Register on his cellular telephone line. As the investigation into the drug trafficking ring continued, including five additional drug transactions between Thomas and Detective Lloyd, law enforcement sought and received a wire intercept, or wiretap order for Thomas' cellular telephone line from the Superior Court. The order permitted the interception of all communication to and from Thomas' cell phone beginning on May 7, 2010. Intercepted communications from this phone line and additional information gathered through police surveillance led to additional wire orders on the phones of Bordley and Loper, among others.

---

[2] *State v. Thomas*, Del. Super., ID No. 1009005841, DI 73.

3

During the pendency of the wiretap, law enforcement officers monitored the intercepted calls and conducted surveillance to corroborate information from the calls, when practicable. On May 7, 2010, officers intercepted calls from Thomas indicative of extortion. Thomas took a 1996 Pontiac Transport van from a drug client because of an unpaid debt. Additional calls showed Thomas storing the vehicle, directing its use and planning for its disposal. Two days later on May 9, 2010, calls indicated that Thomas, who was a person prohibited from buying or possession firearms or ammunition, was directing one of his drug buyers to purchase ammunition for him.

On May 12, 2010, intercepted calls showed Thomas delivering either crack cocaine or marijuana to other individuals including Karen Sebastian, Kyle Scott and David Vilone. Later in the month, calls indicated that Thomas was in possession of a firearm.

Coinciding with the monitoring of Thomas' phone, law enforcement officers intercepted calls between Bordley, Lope and Nathaniel Evans ("Evans"). These calls showed that two kilograms of cocaine were delivered by Juan Carlos Benitez to Bordley and Evans. Conversations from Bordley's phone line showed the distribution network for the cocaine leading law enforcement to conclude that Thomas was part of this network. After Bordley obtained his kilogram of cocaine, call intercepts and surveillance indicated that Thomas obtained approximately 3 ounces of cocaine from him.

On May 21, 2010, two days after the kilogram deal, Detective Lloyd purchased 3.5 grams of crack cocaine and an amount of marijuana from Thomas.

Later that day, intercepted calls showed Thomas concerned about a handgun hidden in his car. Law enforcement executed a stop on this car and the gun was seized. In the days following, intercepted calls and surveillance showed Thomas purchasing drugs from Bordley and then selling them.

On one occasion intercepted calls indicated that Thomas sold cocaine to Renell Carter ("Carter"). After the sale Thomas discussed the cash he saw in Carter's possession and discussed a plan to rob her at gunpoint. Thomas, realizing that Carter would recognize him, arranged for Rakeem Peace ("Peace") to commit the actual crime by directing him on how to commit the robbery and providing him with a firearm. Calls between Thomas, Peace and Carter indicate that the robbery occurred but was not financially fruitful. Following the robbery, Thomas can be heard arranging for the storage and retrieval of the gun and arranging more drug deals.

On June 13, 2010, Thomas arranged for Frederick James ("James") to be lured to an area where it would be convenient for Thomas to shoot at him (Exhibit E).[3] Intercepted calls showed Thomas arranging to pick up his gun, ordering someone to wipe fingerprints off of the ammunition and directing others to get James into position. Later in the investigation James informed police that he was shot at by Thomas due to ongoing issues between the two. Police also seized shell casings in the area where the shooting occurred.

Delaware State Police executed arrest warrants related to this investigation

---

[3] *State v. Thomas*, Del. Super., ID No. 1009005841, DI 73.

on June 15, 2010. That afternoon the police learned that Thomas was going to the residence at 139 Barney Jenkins Road in Felton, a location where Thomas was known to store a firearm (Exhibit F).[4] The police arrived while Thomas was still in his vehicle outside of the residence. As the police entered the driveway, Thomas rammed his vehicle into the driver's side of the police vehicle. The impact occurred as Trooper Ballenger was attempting to exit, trapping his leg in the door. After hitting the police vehicle, Thomas reversed his vehicle and then proceeded forward again. This time Thomas struck a second police vehicle head on. The police shot at the vehicle, which reversed at a high rate of speed and the vehicle finally came to rest after it hit a shed.

## THOMAS' CONTENTIONS

Thomas' Motion for Postconviction Relief filed by Appointed Counsel pursuant to Superior Court Rule 61 raises the following grounds for relief:

| Ground one: | Trial Counsel was ineffective for arranging a meeting with the prosecutor prior to the plea. |
|---|---|
| Ground two: | Trial counsel was ineffective for recommending an "open sentencing" and presentence investigation. |

## DISCUSSION

Under Delaware law, this Court must first determine whether Thomas has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may

---

[4] *State v. Thomas*, Del. Super., ID No. 1009005841, DI 73.

consider the merits of his postconviction relief claim.[5] This is Thomas' first motion for postconviction relief, and it was initiated with his request for appointment of counsel within one year of his conviction becoming final. Therefore, the requirements of Rule 61(i)(1) - requiring filing within one year and (2) - requiring that all grounds for relief be presented in initial Rule 61 motion, are met. None of Thomas' claims were specifically[6] raised at the plea, sentencing, or on direct appeal. Therefore, they are barred by Rule 61(i)(3), absent a demonstration of cause for the default and prejudice. Both of Thomas' claims are based on ineffective assistance of counsel; therefore, he has alleged cause for his failure to have raised them earlier.

At this point, Rule 61(i)(3) does not bar relief as to Thomas' grounds for relief, provided he demonstrates that his counsel was ineffective and that he was prejudiced by counsel's actions. To prevail on his claim of ineffective assistance of counsel, Thomas must meet the two-prong test of *Strickland v. Washington*.[7] In the context of a guilty plea challenge, *Strickland* requires a defendant show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's actions were prejudicial to him in that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on

---

[5] *Bailey v. State,* 588 A.2d 1121, 1127 (Del. 1991).

[6] On direct appeal Thomas argued his Trial Counsel was ineffective but the Delaware Supreme Court did not review those claims.

[7] 466 U.S. 668 (1984).

going to trial and that the result of a trial would have been his acquittal.[8] The failure to establish that a defendant would not have pled guilty and would have proceeded to trial is sufficient cause for denial of relief.[9] In addition, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[10] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[11] This standard is highly demanding.[12] *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of hindsight."[13]

Following a complete review of the record in this matter, it is abundantly clear that Thomas has failed to allege any facts sufficient to substantiate his claim that his attorney was ineffective. I find Trial Counsel's affidavit in conjunction with the record, more credible that Thomas' claims that his counsel's representation was

---

[8] *Id.* at 687.

[9] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997)(citing *Albury v. State*, 551 A.2d 53, 60 (Del. 1988))(citations omitted).

[10] *See e.g.*, *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[11] *Albury*, 551 A.2d at 59 (citing *Strickland*, 466 U.S. at 689).

[12] *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990)(quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)).

[13] *Strickland*, 466 U.S. at 689.

ineffective. Thomas' counsel clearly denies the allegations. Furthermore, nowhere in his motion does Thomas claim to be innocent, he merely argues that counsel's actions forced him to take a plea. Thomas claims to have been essentially a victim of pressure to plea. Thomas' arguments are directly and specifically denied by his Trial Counsel who completely contradicts Thomas' self serving version of events. Thomas claims he was unaware that Gary Marshall was employed by his attorney when in fact Thomas had met with Mr. Marshall multiple times prior to his plea. Thomas is clearly disingenuous at best and completely lying at worst. Furthermore according to Thomas' Trial Counsel it was Thomas who requested a presentence investigation as opposed to accepting the plea offer to 24 years offered by the State. I find Trial Counsel far more credible than Thomas. Clearly had he gone to trial the likelihood of conviction was very high and he faced life incarceration.

As noted, Thomas was facing the possibility of life incarceration had he been convicted, and the sentence and plea were extremely reasonable under all the circumstances, especially in light of the overwhelming evidence against him. Prior to the entry of the plea, Thomas and his attorney discussed the case. It was Thomas' obstinance in refusing the State's plea offer and demanding a presentence investigation that led to a longer sentence. Thomas has no one to blame but himself. Even with the longer sentence the plea bargain was clearly advantageous to Thomas in that he avoided a much longer sentence had he been convicted at trial. Counsel's representation was certainly well within the range required by *Strickland*. Additionally, when Thomas entered his guilty plea, he stated he was satisfied with defense counsel's performance. He is bound by his statement unless he presents clear

and convincing evidence to the contrary.[14] Consequently, Thomas has failed to establish that his counsel's representation was ineffective under the *Strickland* test. Additionally Thomas acknowledged his guilt several times.

Even assuming, *arguendo*, that counsel's representation of Thomas was somehow deficient, Thomas must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[15] In an attempt to show prejudice, Thomas simply asserts that his counsel was ineffective and speculates that he "may" have been given a more favorable plea. Instead he was given a better plea and he himself chose not to accept it and risk a presentence investigation. His statements are insufficient to establish prejudice, particularly in light of the overwhelming evidence against him. Therefore, I find Thomas' grounds for relief are meritless.

To the extent that Thomas alleges his plea was involuntary, the record contradicts such an allegation. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to a plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[16] At the guilty-plea hearing, the Court asked Thomas whether he understood the nature of the

---

[14] *Mapp v. State*, 1994 WL 91264, at \*2 (Del.Supr.)(citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

[15] *Larson v. State*, 1995 WL 389718, at \*2 (Del. Supr.)(citing *Younger*, 580 A.2d 552, 556 (Del. 1990)).

[16] *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

10

charges, the consequences of his pleading guilty, and whether he was voluntarily pleading guilty. The Court asked Thomas if he understood he would waive his constitutional rights if he pled guilty; if he understood each of the constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form ("Guilty Plea Form"); and whether he gave truthful answers to all the questions on the form. The Court asked Thomas if he had discussed the guilty plea and its consequences fully with his attorney. The Court asked Thomas if he was entering into the plea because he was guilty of the charges. The Court also asked Thomas if he was satisfied with this counsel's representation. Thomas answered each of these questions affirmatively.[17] I find counsel's representations far more credible than Thomas' self-serving, vague allegations.

Furthermore, prior to entering his guilty plea, Thomas signed a Guilty Plea Form and Plea Agreement in his own handwriting. Thomas' signatures on the forms indicate that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Thomas is bound by the statements he made on the signed Guilty Plea Form, unless he proves otherwise by clear and convincing evidence.[18] I confidently find that Thomas entered his guilty plea knowingly and voluntarily and that Thomas' grounds for relief are completely meritless.

---

[17] *State v. Thomas*, Del. Super., ID No. 1009005841 (Jan. 26, 2012) Tr. at 6-13.

[18] *Sommerville*, 703 A.2d at 632.

11

*State v. Thomas*
ID No. 1009005841
March 28, 2018

## CONCLUSION

I find that Thomas' counsel represented him in a competent and effective manner and that Thomas has failed to demonstrate any prejudice stemming from the representation. I also find that Thomas' guilty plea was entered knowingly and voluntarily. I recommend that the Court *deny* Thomas' motion for postconviction relief as procedurally barred and completely meritless.


/s/ Andrea M. Freud
Commissioner

AMF/dsc
oc:   Prothonotary

12