**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | | |
|---|---|---|---|
| STATE OF DELAWARE | : | I.D. No. 1505013606 | |
| | : | In and for Kent County | |
| v. | : | | |
| | : | RK15-07-0546-01 Murder 2nd (F) | |
| DA MIER HARMON, | : | RK15-07-0548-01 PFDCF (F) | |
| | : | | |
| Defendant. | : | | |

**ORDER**

Submitted: December 31, 2018
Decided: January 17, 2019

On this 17th day of January 2019, upon consideration of Da Mier Harmon's ("Mr. Harmon's") Motion for Postconviction Relief, the Commissioner's Report and Recommendation, and the record in this case, it appears that:

1. Mr. Harmon pled guilty the day his trial was set to begin on November 29, 2016 to one count of Murder in the Second Degree, as a lesser included offense of Murder in the First Degree, and one count of Possession of a Firearm During the Commission of a Felony. In exchange for his plea, the State entered *nolle prosequis* on the remaining counts including one count of Robbery in the First Degree, one count of Possession of a Firearm by a Person Prohibited, and one additional count of Possession of a Firearm During the Commission of a Felony.

2. As part of the plea agreement, the State recommended a maximum sentence of thirty years incarceration. Mr. Harmon faced mandatory life in prison had he been convicted of the lead charge of First Degree Murder. The Court ordered a presentence investigation, and the defense presented mitigating evidence. At the sentencing on February 28, 2017, Mr. Harmon again admitted his complicity in the murder and asked for forgiveness from the victim's family. The Court agreed with the State's recommendation and sentenced Mr. Harmon to a total of fifty years incarceration

suspended after thirty years, for probation.

3. Mr. Harmon did not appeal his conviction or sentence to the Delaware Supreme Court. Rather, he filed, *pro se*, the pending motion for postconviction relief pursuant to Superior Court Criminal Rule 61 alleging ineffective assistance of counsel. He also requested the appointment of counsel. This Court denied that request pursuant to Superior Court Criminal Rule 61(e)(2).[1]

4. Next, Mr. Harmon filed a writ of Mandamus with the Delaware Supreme Court concerning this Court's denial of his request for appointment of counsel. The Supreme Court denied the writ on February 13, 2018[2] and the matter was set for briefing on the pending postconviction motion.

5. On October 12, 2018, the Commissioner filed her Report and Recommendation to deny Mr. Harmon's Rule 61 Motion. Mr. Harmon filed no exceptions to the Report and Recommendation.

**NOW, THEREFORE,** after a *de novo* review of the record in this matter, and for the reasons stated in the Commissioner's Report and Recommendation dated October 12, 2018;

**IT IS HEREBY ORDERED** that the Commissioner's Report and Recommendation attached as Exhibit "A", is hereby adopted by the Court in its entirety. Accordingly, Mr. Harmon's Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 is **DENIED**.

/s/Jeffrey J Clark
Judge

---

[1] *See State v. Da Mier Harmon*, C.A.No.1505013606 (Del. Super. Ct. Dec. 20, 2017)(discussing the prior version of Rule 61 and that the applicable version's relevant provisions were later designated as Rule 61(e)(3)).

[2] *IMO the Petition of Da Mier Harmon for a writ of mandamus*, Del. Supr. No. 42, 2018, Traynor, J. (Feb. 13, 2018).

# Exhibit A

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | I.D. No. 1505013606 |
| | ) | In and for Kent County |
| v. | ) | |
| | ) | RK15-07-0546-01 Murder 2nd (F) |
| DA MIER HARMON, | ) | RK15-07-0548-01 PFDCF (F) |
| | ) | |
| Defendant. | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Stephen R. Welch, Jr., Esquire, Deputy Attorney General, Department of Justice, for the State of Delaware.

Damier Harmon, *Pro se*.

FREUD, Commissioner
October 12, 2018

The defendant, Da Mier Harmon ("Harmon"), pled guilty the day his trial was set to begin November 29, 2016 to one count of Murder in the Second Degree, as a lesser included offense of Murder in the First Degree, 11 *Del. C.* § 635, and one count of Possession of a Firearm During the Commission of Felony 11 *Del. C.* § 1447A. In exchange for his plea the State entered *nolle prosequis* on the remaining counts including one count of Robbery in the First Degree, one count of Possession of Firearm by a

Person Prohibited, and one additional count of Possession of a Firearm During the Commission of a Felony. As part of the Plea Agreement the State recommended a maximum sentence of thirty years incarceration. Due to the nature of the charges Harmon faced mandatory life in prison had he been convicted of the lead charge of First Degree Murder. A presentence office investigation was ordered and the defense presented detailed mitigating evidence. At the sentencing on February 28, 2017 Harmon again admitted his complicity and asked for forgiveness from the victims family. The Court agreed with the State's recommendation and sentenced Harmon to a total of fifty years incarceration suspended after thirty years for probation, eighteen of which were minimum mandatory. Harmon did not appeal his conviction or sentence to the Delaware Supreme Court. He filed, pro se, the pending motion for postconviction pursuant to Superior Court Criminal Rule 61 on August 7, 2017 alleging ineffective assistance of counsel. He also requested the appointment of counsel. This court denied that request pursuant to Superior Court Criminal Rule 61(e)(2). Next Harmon filed a writ of Mandamus with the Delaware Supreme Court concerning this Court's denial of his request for appointment of counsel. The Supreme Court denied the writ on February 13, 2018[3] and the matter was set for briefing on the pending postconviction motion.

## FACTS

According to the Probable Cause Affidavit[4] and the transcript from the Preliminary Hearing,[5] at approximately 8:54 p.m. on May 13, 2015 Dover Police were dispatched to Harmony Lane north of Walker Road in Dover in reference to a shooting. Upon arriving at the scene Detective Wood of Dover Police Department located the victim

---

[3] *IMO the Petition of Damier Harmon for a writ of mandamus*, Del. Supr. No. 42, 2018, Traynor, J. (Feb. 13, 2018).
[4] *State v. Harmon*, Del. Super. ID No. 1505013606, D.I. 1.
[5] *Harmon.*, D.I. 3.

Gary Adams ("Adams") on the ground with a gunshot wound to his left upper chest. Adams was taken to Kent General Hospital were he was declared dead. A subsequent autopsy determined that Adams died as a result of a gunshot wound and the death was found to be a homicide.

Detective Wood spoke with witness # 1 who told the officer that he and Adams had agreed to meet two individuals via text message in order to sell them some marijuana. Witness # 1 stated that Adams' cell phone's battery had run out so Adams used witness # 1's cell phone to text the individual they thought intended to purchase the marijuana. Witness # 1 allowed the police to view his cell phone and see the text messages and the phone number of the individual who was arranging the meeting. Witness # 1 stated that when he and Adams arrived on Harmony Lane they were directed where to park their car and two suspects one tall thin black male, later identified as Bruce Manlove ("Manlove"), Harmon's co-defendant, and one a shorter heavyset black male, later identified as Harmon, approached the vehicle and Adams handed a bag of marijuana to Manlove who put it in his pocket according to witness # 1. At this point witness # 1 stated that Harmon produced a handgun and ordered Adams to turn over his property. Adams got out of the vehicle and a scuffle ensued. Witness # 1 observed the scuffle and heard a single gunshot then saw Adams collapse on the ground at which point the two suspects fled the scene in a southbound direction. A single 9 mm casing was found at the scene.

Detective Wood also interviewed a second witness. Witness # 2 stated he lived in the neighborhood and was outside when he saw two persons he identified as "BJ" and "Hamburger." BJ being a tall skinny black male and Hamburger being a short heavyset black male. Witness # 2 stated he saw the car, later identified as the one witness # 1 and Adams were in, pull into the neighborhood. Witness # 2 stated he saw BJ and

6

Hamburger walk up to the car. Witness # 2 was speaking with an acquaintance when he looked up a second time and saw the passenger from the car struggling with BJ and Hamburger. Witness # 2 then heard a gunshot and saw Adams collapse. As they ran away witness # 2 saw Hamburger trying to tuck something into his sweatshirt. Witness # 2 told the police that Hamburger lives at the entrance to the neighborhood and was on home confinement. The investigation revealed that Harmon lives where witness # 2 said "Hamburger" lives and that Harmon was on Level 4 monitoring and was in the vicinity at the time of the murder. The investigation also revealed that shortly after the murder Harmon had cut off his ankle bracelet and fled the area. Witness # 2 positively identified Manlove as "BJ," the tall skinny black male. He also identified Harmon as "Hamburger," the shorter heavy set black male. Manlove and Harmon were apprehended at a hotel in Philadelphia a short time after the crime and extradited to Delaware. Manlove confessed to his involvement in the crime and implicated Harmon as the shooter. As part of his plea agreement Manlove agreed to testify at Harmon's trial.

## HARMON'S CONTENTIONS

In his motion Harmon raises the following grounds for relief:

Ground one:      Ineffective Counsel.
Did Counsel fail to investigate into facts relevant to preparing defense for trial, or arguement (sic) for less time, resulting in prejudice and failure to aid client?

Ground two:      Ineffective Counsel and Due Process.
Was plea accepted knowingly and intellegently (sic), and, did counsel use coercive tactic in getting defendant to sign plea?

Ground three:      Ineffective Counsel.
Was Counsel's failure to request "change of venue"

7

ineffective, when victims father was Police officer in County where crime was committed?

## DISCUSSION

Under Delaware law, this Court must first determine whether Harmon has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of his postconviction relief claim.[6] This is Harman's first motion for postconviction relief, and it was filed within one year of his conviction becoming final. Therefore, the requirements of Rule 61(i)(1) - requiring filing within one year and (2) - requiring that all grounds for relief be presented in initial Rule 61 motion, are met. None of Harmon's claims were raised at the plea, sentencing, or on direct appeal. Therefore, they are barred by Rule 61(i)(3), absent a demonstration of cause for the default and prejudice. All of Harmon's claims are based on ineffective assistance of counsel; therefore, he has alleged cause for his failure to have raised them earlier.

At this point, Rule 61(i)(3) does not bar relief as to Harmon's grounds for relief, provided he demonstrates that his counsel was ineffective and that he was prejudiced by counsel's actions. To prevail on his claim of ineffective assistance of counsel, Harmon must meet the two-prong test of *Strickland v. Washington*.[7] In the context of a guilty plea challenge, *Strickland* requires a defendant show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's actions were prejudicial to him in that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial and that the result of a trial would have been his acquittal.[8] The failure to establish that a defendant would

---

[6] *Bailey v. State,* 588 A.2d 1121, 1127 (Del. 1991).

[7] 466 U.S. 668 (1984).

[8] *Id*. at 687.

8

not have pled guilty and would have proceeded to trial is sufficient cause for denial of relief.[9] In addition, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[10] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[11] This standard is highly demanding.[12] *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of hindsight."[13]

Following a complete review of the record in this matter, it is abundantly clear that Harmon has failed to allege any facts sufficient to substantiate his claim that his attorney was ineffective. I find trial counsel's affidavit, in conjunction with the record, more credible that Harmon's self-serving claims that his counsel's representation was ineffective. Harmon's counsel clearly denies the allegations.

As noted, Harmon was facing the possibility of mandatory life in prison had he been convicted, and the sentence and plea were reasonable under all the circumstances, especially in light of the overwhelming evidence against him. Prior to the entry of the plea, Harmon and his attorney discussed the case. The plea bargain was clearly advantageous to Harmon. Counsel's representation was certainly well within the range required by *Strickland*. Additionally, when Harmon entered his guilty plea, he stated he

---

[9] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997)(citing *Albury v. State*, 551 A.2d 53, 60 (Del. 1988))(citations omitted).

[10] *See e.g.*, *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[11] *Albury*, 551 A.2d at 59 (citing *Strickland*, 466 U.S. at 689).

[12] *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990)(quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)).

[13] *Strickland*, 466 U.S. at 689.

was satisfied with defense counsel's performance. He is bound by his statement unless he presents clear and convincing evidence to the contrary.[14] Consequently, Harmon has failed to establish that his counsel's representation was ineffective under the *Strickland* test.

Even assuming, *arguendo*, that counsel's representation of Harmon was somehow deficient, Harmon must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[15] In an attempt to show prejudice, Harmon simply asserts that his counsel was ineffective. His statements are insufficient to establish prejudice, particularly in light of the evidence against him. Therefore, I find Harmon's grounds for relief are meritless.

To the extent that Harmon alleges his plea was involuntary, the record contradicts such an allegation. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to a plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[16] At the guilty-plea hearing, the Court asked Harmon whether he understood the nature of the charges, the consequences of his pleading guilty, and whether he was voluntarily pleading guilty. The Court asked Harmon if he understood he would waive his constitutional rights if he pled guilty; if he understood each of the constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form ("Guilty Plea Form"); and whether he gave truthful answers to all the questions on the form. The Court asked Harmon if he had discussed the guilty plea and its consequences fully with his attorney. The Court asked Harmon if he was entering into

---

[14] *Mapp v. State*, 1994 WL 91264, at *2 (Del.Supr.)(citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

[15] *Larson v. State*, 1995 WL 389718, at *2 (Del. Supr.)(citing *Younger*, 580 A.2d 552, 556 (Del. 1990)).

[16] *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

the plea as he was guilty of the charges. The Court also asked Harmon if he was satisfied with this counsel's representation. Harmon answered each of these questions affirmatively.[17] Additionally at his sentencing Harmon acknowledged his guilt and requested forgiveness from his victims's family.[18] I find counsel's representations far more credible than Harmon's self-serving, vague allegations.

Furthermore, prior to entering his guilty plea, Harmon signed a Guilty Plea Form and Plea Agreement in his own handwriting. Harmon's signatures on the forms indicate that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Harmon is bound by the statements he made on the signed Guilty Plea Form, unless he proves otherwise by clear and convincing evidence.[19] I confidently find that Harmon entered his guilty plea knowingly and voluntarily and that Harmon's grounds for relief are completely meritless.

## CONCLUSION

I find that Harmon's counsel represented him in a competent and effective manner and that Harmon has failed to demonstrate any prejudice stemming from the representation. I also find that Harmon's guilty plea was entered knowingly and voluntarily. I recommend that the Court ***deny*** Harmon's motion for postconviction relief as procedurally barred and completely meritless.

/s/ Andrea M. Freud
Commissioner

AMF/dsc

---

[17] *State v. Harmon*, Del. Super., ID No. 1505020549, (Nov. 29, 2015), Tr. of Plea at 18 to 28.
[18] *Harmon*, Del. Super., ID No. 1505020549 (Feb 28, 2016), Tr. of Sentencing at 9.
[19] *Sommerville,* 703 A.2d at 632.