# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | In and for Kent County |
| | ) | ID. No. 1706010540 |
| v. | ) | |
| | ) | RK17-06-0573-01 |
| **ANTHONY G. HARMON,** | ) | Child Sex Abuse (F) |
| | ) | |
| Defendant. | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

**Upon Defendant's Motion for Postconviction Relief
Pursuant to Superior Court Criminal Rule 61**

Kathleen A. Dickerson, Esq., Deputy Attorney General, Department of Justice, for the State of Delaware.

Anthony G. Harmon, *pro se.*

FREUD, Commissioner
August 23, 2019

The defendant, Anthony G. Harmon ("Harmon"), pled guilty on January 11, 2018 to one count of Felony Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the First Degree ("Child Sexual Abuse"), 11 *Del. C.* § 778(2). He also faced one additional count of Child Sexual Abuse and two counts of Felony Sex Offender Unlawful Sexual Conduct Against a Child which were

*nolle prossed* by the State in exchange for Harmon's plea. As part of the plea deal the State and the defense agreed upon a recommended sentence of twenty-five years incarceration suspended after serving twelve years, ten of which were minimum mandatory followed by probation. The Court agreed with the sentence recommendation and sentenced Harmon accordingly. Had Harmon gone to trial and been found guilty as charged he faced life in prison due to his status as an habitual offender.[1] Harmon did not appeal his conviction or sentence to the State Supreme Court. Instead, Harmon filed the pending motion for postconviction relief pursuant to Superior Court Criminal Rule 61 on September 27, 2018 in which he alleges, in part, ineffective assistance of counsel.

## FACTS

The following are the facts as outlined by the State in their reply to Harmon's motion and documented by accompanying exhibits including the police report, DNA report and other documents attached to the State's Reply.

> The defendant was arrested on June 15, 2017, and subsequently charged by indictment with two counts of Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the First Degree, violations of 11 *Del. C.* § 777(2), and two counts of Sex Offender Unlawful Sexual Conduct Against a Child, violations of 11 *Del. C.* § 777A. The case resulted from a disclosure of sexual abuse by the 14-year old victim who informed her

---

[1] Part of the Plea Agreement with the State was that in exchange for his guilty plea and Harmon's acknowledgment of his habitual offender status, the State would not be seeking sentencing of Harmon as an habitual offender. However had he gone to trial he would have been subject to sentencing as an habitual offender.

2

mother through text messaging that she had engaged in sexual intercourse with the defendant who was her mother's husband. (Exhibit "A"). The victim indicated that she thought she could be pregnant with the defendant's child.

Following the disclosure, a forensic interview was conducted with the victim at the Children's Advocacy Center [("CAC")]. During this interview the victim disclosed that the defendant had engaged in sexual contact and sexual intercourse with her on several occasions at different locations. The victim stated that the last incident occurred on March 12, 2017, at the family's home at [address redacted] in Dover. On this date she performed fellatio on the defendant and they engaged in penile-vaginal intercourse on the defendant's marital bed. The victim stated that she wore a white short sleeve shirt, orange or pink pajama pants, and dark blue or pink underwear. While the victim and defendant were in the bedroom, he used a camera application on his cell phone to monitor the home's stairwell to make sure that no one saw them.

The victim received medical treatment, including a forensic examination, at Bayhealth - Kent General Hospital. During this examination she revealed that she had sex with her stepfather the day before and that she had engaged in sexual intercourse with him on other occasions during the past year. She reported to the nurse examiner that the last encounter included penile-vaginal intercourse and oral copulation with the defendant (Exhibit "B").

Detective Boone of Dover Police Department interviewed the defendant. The defendant denied having a sexual

3

relationship with the victim and could not explain why the victim would make this allegation. He stated that they had a good relationship. He admitted that he was in the bedroom with her for twenty minutes on March 12, 2017, that he used the cell phone application to monitor the house's camera and that his daughter was in the shower during the time he was in the bedroom with the victim.

Evidence was collected from various sources during the investigation. The victim's dark pink or red sweat pants were seized from a laundry hamper in her bedroom and sent to the Division of Forensic Science for examination. Analysis revealed the presence of the defendant's spermatozoa on the pants. The analyst opined that the odds of the DNA profile coming from any person other than the defendant were 1 in 7 trillion (Exhibit "C").

The defendant was interviewed a second time at Dover Police Department and confronted with the results of the DNA test. He again denied sexual contact. He informed the detective multiple times that he had no explanation for the results. He then requested to speak to his wife, the victim's mother and told her over the telephone that the victim had requested his sperm so she could get pregnant. He told his wife that he ejaculated into a cup in the bathroom so she could use it.

In 2016, prior to this investigation, the victim disclosed to a counselor that the defendant had been touching her and wanted to have sex with her. During a CAC interview on November 1, 2016, the victim denied that the defendant had engaged in any inappropriate behavior and explained that she had lied to her therapist because her mother was not giving her enough attention. These allegations did not

result in an arrest; however the related police report was provided to the defense in this case (Exhibit "D").[2]

## HARMON'S CONTENTIONS

In his motion, Harmon raises the following grounds for relief:

Ground one:         Ineffective assistance of counsel.
It is always the critical point for a Defense Counselor to inform his or her client of the advantages and disadvantages of a plea bargain or Trial event. Suzanne Macpherson [-Johnson] defense failed below an objective standard as an attorney when she failed to look into evidence regarding Child Advocate Center interview recordings of sexual phone messages to child's Aunt.

Ground two:         Weight and sufficiency.
William L. Witham Superior Court Judge rendered an excessive sentence, Judge was partial and aware of unrelated facts of other crimes defendant had in the past. Regulatory Provisions was not followed and measured to movant as any other citizen of the United States of America.

Ground three:       Due Process Rights were violated.
Statutorily authorized limits were exceeded because the judge did not consider the weight of a Child Sex Abuse charge "verses" (sic) a Rape 1st degree offense which is forcible

---

[2] *State v. Harmon*, Del. Super, ID No. 1706010540, D.I. 26.

violence.

## DISCUSSION

Under Delaware law, this Court must first determine whether Harmon has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of his postconviction relief claim.[3] This is Harmon's first motion for postconviction relief, and it was filed within one year of his conviction becoming final. Therefore, the requirements of Rule 61(i)(1) - requiring filing within one year and (2) - requiring that all grounds for relief be presented in initial Rule 61 motion, are met. None of Harmon's claims were raised at the plea, sentencing, or on direct appeal. Therefore, they are barred by Rule 61(i)(3), absent a demonstration of cause for the default and prejudice. Only Harmon's first ground for relief is based on ineffective assistance of counsel; therefore, he has alleged cause for his failure to have raised the claim earlier. He makes no argument for his failure to have raised his remaining two claims earlier. They are therefore clearly procedurally by Rule 61(i)(3).

At this point, Rule 61(i)(3) does not bar relief as to Harmon's first ground for relief, provided he demonstrates that his counsel was ineffective and that he was prejudiced by counsel's actions. To prevail on his claim of ineffective assistance of counsel, Harmon must meet the two-prong test of *Strickland v. Washington*.[4] In the

---

[3] *Bailey v. State,* 588 A.2d 1121, 1127 (Del. 1991).

[4] 466 U.S. 668 (1984).

6

context of a guilty plea challenge, *Strickland* requires a defendant show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's actions were prejudicial to him in that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial and that the result of a trial would have been his acquittal.[5] The failure to establish that a defendant would not have pled guilty and would have proceeded to trial is sufficient cause for denial of relief.[6] In addition, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[7] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[8] This standard is highly demanding.[9] *Strickland* mandates that, when viewing counsel's representation, this Court must

---

[5] *Id.* at 687.

[6] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997)(citing *Albury v. State*, 551 A.2d 53, 60 (Del. 1988))(citations omitted).

[7] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[8] *Albury*, 551 A.2d at 59 (citing *Strickland*, 466 U.S. at 689).

[9] *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990)(quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)).

7

endeavor to "eliminate the distorting effects of hindsight."[10]

Following a complete review of the record in this matter, it is abundantly clear that Harmon has failed to allege any facts sufficient to substantiate his claim that his attorney was ineffective. I find trial counsel's affidavit, in conjunction with the record, more credible that Harmon's self-serving claims that his counsel's representation was ineffective. Harmon's counsel clearly denies the allegations.

Harmon was facing the possibility of life in prison had he been convicted. The sentence and plea were very reasonable under all the circumstances, especially in light of the overwhelming evidence against him. Prior to the entry of the plea, Harmon and his attorney discussed the case. The plea bargain was clearly advantageous to Harmon. Counsel was successful in negotiating an extremely beneficial plea bargain with the State. Counsel's representation was certainly well within the range required by *Strickland*. Additionally, when Harmon entered his guilty plea, he stated he was satisfied with defense counsel's performance. He is bound by his statement unless he presents clear and convincing evidence to the contrary.[11] Consequently, Harmon has failed to establish that his counsel's representation was ineffective under the *Strickland* test.

Even assuming, *arguendo*, that counsel's representation of Harmon was somehow deficient, Harmon must satisfy the second prong of the *Strickland* test,

---

[10] *Strickland*, 466 U.S. at 689.

[11] *Mapp v. State*, 1994 WL 91264, at *2 (Del.Supr.)(citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[12] In an attempt to show prejudice, Harmon simply asserts that his counsel was ineffective. His statements are insufficient to establish prejudice, particularly in light of the evidence against him. Therefore, I find Harmon's grounds for relief are meritless.

To the extent that Harmon alleges his plea was involuntary, the record contradicts such an allegation. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to a plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[13] At the guilty-plea hearing, the Court asked Harmon whether he understood the nature of the charges, the consequences of his pleading guilty, and whether he was voluntarily pleading guilty. The Court asked Harmon if he understood he would waive his constitutional rights if he pled guilty including the right to suppress evidence; if he understood each of the constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form ("Guilty Plea Form"); and whether he gave truthful answers to all the questions on the form. The Court asked Harmon if he had discussed the guilty plea and its consequences fully with his attorney. The Court asked Harmon if he was entering into the plea as he was guilty of the charges. The Court also asked Harmon

---

[12] *Larson v. State*, 1995 WL 389718, at *2 (Del. Supr.)(citing *Younger*, 580 A.2d 552, 556 (Del. 1990)).

[13] *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

if he was satisfied with this counsel's representation. Harmon answered each of these questions affirmatively.[14] I find counsel's representations far more credible than Harmon's self-serving, vague allegations.

Furthermore, prior to entering his guilty plea, Harmon signed a Guilty Plea Form and Plea Agreement in his own handwriting. Harmon's signatures on the forms indicate that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Harmon is bound by the statements he made on the signed Guilty Plea Form, unless he proves otherwise by clear and convincing evidence.[15] I confidently find that Harmon entered his guilty plea knowingly and voluntarily and that Harmon's grounds for relief are completely meritless.

## CONCLUSION

I find that Harmon's counsel represented him in a competent and effective manner and that Harmon has failed to demonstrate any prejudice stemming from the representation. I also find that Harmon's guilty plea was entered knowingly and voluntarily. I recommend that the Court ***deny*** Harmon's motion for postconviction relief as procedurally barred and completely meritless pursuant to Superior Court Criminal Rule 61(i)(3).

/s/ Andrea M. Freud
Commissioner

---

[14] *State v. Harmon*, Del. Super., ID No. 1706010540 (Jan. 11, 2018) Tr. at 4-9.

[15] *Sommerville*, 703 A.2d at 632.