# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE : ID No. 1908011284
:
:
:
v. :
:
BRADFORD J. HUSFELT, :
:
Defendant. :

Submitted: December 15, 2022
Decided: February 13, 2023

## ORDER

On this 13th day of February 2023, upon consideration of the Defendant Bradford J. Husfelt's motion for postconviction relief, the Commissioner's Report and Recommendation, and the record in this case, it appears that:

1.     Mr. Husfelt pled guilty on September 1, 2021, to one count of Manslaughter, 11 *Del. C.* § 632.  In his plea agreement with the State, he accepted the State's recommendation that the Court sentence him to twenty-five years incarceration suspended after seven years, two years of which constituted a minimum mandatory sentence, to be followed by probation.  The Court sentenced him consistently with that recommendation.

2.     Mr. Husfelt then filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61.   The Court referred the matter to a Superior Court commissioner for findings of fact and recommendations pursuant to *10 Del. C.* § 512(b) and Superior Court Criminal Rule 62.  She issued her findings and recommendations in the Report attached as Exhibit A.   In her Report, she

explained why Mr. Husfelt failed to demonstrate that his counsel performed ineffectively. To the contrary, she recognized that his attorney acted reasonably. As a result, she recommended that the Court deny his Rule 61 motion.

3. After she issued her Report, neither party filed written objections as permitted by Superior Court Criminal Rule 62(a)(5)(ii). Accordingly, the Court accepts her findings and recommendations.

**NOW, THEREFORE,** after a *de novo* review of the record in this matter, and for the reasons stated in the Commissioner's Report and Recommendation dated November 17, 2022:

**IT IS HEREBY ORDERED** that the Court adopts the Commissioner's Report and Recommendation attached as Exhibit A in its entirety. Accordingly, Mr. Husfelt's motion for postconviction relief pursuant to Superior Court Criminal Rule 61 is **DENIED**.

/s/Jeffrey J Clark
Resident Judge

JJC/klc

oc: Prothonotary
cc: The Honorable Andrea M. Freud
     Jason Cohee, DAG
     Trial Counsel
     Bradford Husfelt, *Pro Se*

# Exhibit A

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | : | I.D. No. 1908011284 |
| | : | In and For Kent County |
| v. | : | |
| | : | |
| | : | |
| BRADFORD J. HUSFELT, | : | RK-19-090429-01 MANSLAUGHTER |
| SBI # 00568684 | : | |
| | : | |
| Defendant. | | |

**COMMISSIONER'S REPORT AND RECOMMENDATION**

**Upon Defendant's Motion For Postconviction Relief
Pursuant To Superior Court Criminal Rule 61**

Jason C. Cohee, Esq., Department of Justice for *State of Delaware*

Bradford J. Husflet, *pro se*

FREUD, Commissioner
November 17, 2022

The defendant, Bradford J. Husfelt ("Husfelt") pled guilty on September 1, 2021, to one count of Manslaughter 11 *Del.C.* § 0632. He had also been charged with one count of leaving the Scene of a Collision Resulting in Death, one count of Hindering Prosecution, one count of Driving While Suspended or Revoked, one count of Reckless Driving, one count of Criminal Mischief, one count of Vehicular Homicide, in the First Degree, one count of Operating an Unregistered Vehicle, one count of Driving Off the Roadway, one count of Driving on a Sidewalk or Bike Path

Prohibited, one count of Not Remaining at the Scene of a Fatal Accident, one count of Failure to Report a Collision, and one count of Following a Motor Vehicle Too Closely. As part of the plea deal, the State agreed to enter *nolle prosequis* on the remaining charges and along with the Defense recommended a sentence of twenty-five-years' incarceration, suspended after serving seven years, two years of which were mandatory minimum, followed by probation. Had Husfelt gone to trial and been found guilty as charged, he faced many years in jail including seven years of mandatory minimum time. Additionally, as part of the lengthy plea bargain process, the State agreed to not indict Husfelt for Murder in the Second Degree. The Court agreed with the sentence recommendation of the parties and sentenced Husfelt in accordance with the plea agreement recommendation.

Husfelt did not appeal his conviction to the State Supreme Court. Instead, he filed the pending Motion for Postconviction Relief, pursuant to Superior Court Criminal Rule 61 on November 29, 2021, in which he alleges ineffective assistance of counsel.

### FACTS

According to the Affidavit of Probable Cause, on August 17, 2019, at approximately 8:30 pm, a Pedestrian, David Rabenold, age 78, was walking on the northern sidewalk near 25 Front Street, Wyoming, DE.

While Mr. Rabenold was walking on the northern sidewalk, two vehicles were approaching his location, both traveling westbound on Front Street toward North Layton Ave. The first car was a dark blue Honda CR-V driven by Emily Pummer. She was being closely followed by the second car, a blue Dodge Neon, which was not registered. The Dodge Neon driven by Bradford J. Husfelt, began to pass the Honda CR-V on the right, as it was driving straight. Pummer stated that the Dodge Neon had been intermittently following her very closely from the area of Caesar Rodney High School to the scene of the crash.

Front Street is a residential roadway in the town of Wyoming, the posted speed limit for the roadway is 25 MPH. The roadway is delineated by solid double yellow centerline, and no fog lines. The travel portion of the roadway is bordered by sidewalks. Beyond the sidewalks the roadway is bordered by residences to the north and south. The nearest intersection is North Layton Avenue, and the collision occurred approximately 417 feet south of North Layton Avenue.

As Husfelt's car began to pass Pummer's car, Husfelt left the roadway, and went onto the sidewalk and partially into the front yard of 25 Front Street. Husfelt then completely left the street and had his left side tires on the sidewalk, and its right-side tires on the yard/grass. Next Husfelt struck and snapped a landscape

timber on Mr. Michael Bakota's property. Husfelt continued driving westward, straddling the sidewalk and the landscape on 25 Front Street. All the while, gaining on Pedestrian/Victim, David Rabenold. While Husfelt was driving on the sidewalk, his vehicle collided with Rabenold, throwing him onto the windshield of the vehicle, and causing him to vault off of the vehicle's roof.

Husfelt's car sustained heavy windshield damage, which caused the right side of the windshield to partially cave into the cabin compartment of the car. Mr. Rabenold was thrown a distance in the air before sliding on the roadway for a final rest. Mr. Rabenold was rushed to Kent General Hospital where he died from the injuries sustained in this collision, later that evening.

After hitting Rabenold, Husfelt managed to pull his vehicle back on Front Street, coming to a stop in the roadway, directly in front of Pummer, who saw Husfelt, lean out of the window, look back at the Rabenold, and then started to slowly pull his vehicle away from the scene without stopping to assist the elderly man he had just violently struck with his car while he was illegally driving on the pedestrian sidewalk.

Occupants in Pummer's car began to yell for Husfelt to stop his vehicle, but he looked back and continued westbound. Neighbors who were outside of the

residences realized partially what had happened. They also yelled for Husfelt to stop. Husfelt then yelled back at one of them and told them to mind their own business.

Shortly after the collision, the State Police received a call at Troop 3 concerning to the whereabouts of the Husfelt's vehicle. The caller stated the vehicle was located at 150 Center Street Wyoming, DE. Troopers then responded to that location.

Cpl. Christine Bowie was the first to arrive to 150 Center Street. When there, she saw a green vehicle with no registration parked in front of the residence. The green vehicle did not have any damage to the front windshield. Cpl. Bowie observed a white male sitting on the stoop of the residence. Cpl. Bowie asked the man if he was in a collision earlier in the evening. The man, who later identified himself as Bradford J. Husfelt, stated, "I was wondering when you would show up." Husfelt stated he had driven to Brown's Tavern and came outside to find his car was damaged. Husfelt stated he believed the damage occurred at Brown's Tavern. Cpl. Bowie asked to see the vehicle, at which time Husfelt walked to the driveway where additional cars were parked. One of the vehicles was covered in a brown car cover. Husfelt took off the brown car cover to reveal a blue Dodge Neon with a shattered

front right windshield. When asked about the damage, Husfelt claimed it must have happened at Brown's and the reason he did not call was because the car has no registration, and he has an active capias. Cpl. Bowie observed blood to the upper right area of the windshield with hair follicles protruding from the glass. Husfelt again confirmed that he was the driver of that vehicle. He was then taken into custody. While in the back of Cpl. Bowie's patrol vehicle, Husfelt spoke briefly with his wife. At this time, he made spontaneous utterances stating, "I killed a man! I am so sorry I didn't mean to kill anyone." Husfelt's vehicle was seized and transported to Troop 3 where it was stored as evidence.

While on scene, Cpl. Bowie issued Husfelt his *Miranda* warning and he agreed to answer questions. Husfelt stated he left his home to drive to Brown's Tavern. He claims the damage to the vehicle must have occurred at Brown's as he did not recall any accident while on his way to the store. Cpl. Bowie informed him of the fatal accident at which time he stated what if I killed someone? Due to the nature of the accident, with a suspicion that Husfelt may have been impaired, Cpl. Bowie took him to Troop 3 for further testing.

Cpl. Bowie proceeded to conduct a series of National Highway Traffic Safety Administration Field Test (NHTSA). Cpl. Bowie noted eye conditions that were

indicative of marijuana impairment. During the walk and turn, Husfelt needed to be reminded to hold the instructional position of heel to toe. He also began the test prior to being instructed to do so. During the rest, he stepped offline on step 3 and 7. For the turn, Husfelt pivoted back into himself, with one large step (not the instructed manner of a series of small steps). On the return, Husfelt raised his arms from his side on step 8. Both series of steps were 9 steps. Husfelt, who is missing the big toe of his left foot, raised his left leg for the one left stand. He performed that test as instructed. Cpl. Bowie proceeded to perform a Drug Recognition Evaluation. First, Husfelt acknowledged to smoking marijuana all day everyday but added that he smoked earlier today, at approximately 4:00 pm. After Cpl. Bowie confronted Husfelt with the findings of cannabis, Husfelt admitted to smoking marijuana from his pen immediately after waking up from his nap, which was just prior to him driving to the store. He also reports when he got back from the store, he took another hit. Cpl. Bowie added that Husfelt's overall demeanor was mostly carefree, at times even joking. With the above listed observations and recordings, Cpl. Bowie determined that Husfelt was under the influence of Cannabis and unable to operate a motor vehicle safely.

Husfelt consented to a blood draw.

Following his return to Troop 3 from KGH, the investigating officer interviewed Husfelt concerning to the collision. Husfelt was re-read his *Miranda* rights and agreed to answer questions. Husfelt stated that after he woke from his nap around 7 pm, his roommates asked him to drive to the liquor store. Husfelt left his house and was on his way to the liquor store when he believes he fell asleep. Husfelt awoke to someone yelling at him from another car. Husfelt did not see the damage to his windshield because it was dark and pulled away. Husfelt explained he drove to Brown's Tavern and went inside to purchase the requested alcohol. Once he exited the store, he observed the damage to his windshield and thought someone must have damaged his vehicle when he was inside of Brown's Tavern (maybe from a fight). Husfelt stated that he didn't know that he had hit anyone. Husfelt, left the store and observed ambulances and fire trucks and then panicked and drove back home.

### HUSFELT'S CONTENTIONS

Ground One: Denial of Right to Speedy Trial.
Detained in pretrial status for 21-months with no indictment or plea offer.

Ground Two: Ineffective Assistance of Counsel.
Lawyer led Husfelt into taking a pre-indictment plea and one week later excepted (sp.) an indictment, which led to that plea being used three months later to convict Husfelt.

Ground Three:     Ineffective Assistance of Counsel.
Husfelt was coerced into taking pre-indictment plea by being threatened of being indicted by Murder if Husfelt did not except that pre-indictment plea. "coercion"

Ground Four:      Ineffective Assistance of Counsel.
Husfelt was never informed he would be sentenced under T.I.S. which didn't come to light until Husfelt received his sentencing order in the mail. It was not told to him in Court or by his attorney

## DISCUSSION

Under Delaware law, the Court must first determine whether Husfelt has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claim.[1] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[2] Husfelt's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the Motion. As this is Husfelt's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

None of Husfelt's claims were raised previously at his plea, sentencing, or on direct appeal. Consequently, they are barred under Superior Court Criminal Rule 61(i)(3) unless he demonstrates: (1) cause for relief from the procedural default; and

---

[1] *Bailey v. State*, 588 A,2d 1121, 1127 (Del. 1991)
[2] Super. Ct. Crim. R. 61(i)(1)

(2) prejudice from a violation of the movant's rights. [3] The bars to relief are inapplicable to a jurisdictional challenge or "to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of this rule.[4] To meet the requirements of Rule 61 (d)(2) a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted [5] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States or Delaware Supreme Courts, applies to the defendant's case rendering the conviction invalid.[6] Husfelt's motion pleads neither requirement of Rule 61(d)(2).

Each of Husfelt's grounds for relief to some extent, are premised on allegations of ineffective assistance of counsel. Therefore, Husfelt has alleged sufficient cause for not having asserted these grounds for relief before accepting the plea offer and on direct appeal. Husfelt's ineffective assistance of counsel claims are not subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Husfelt, allege ineffective assistance of counsel

---

[3] Super. Ct. Crim. R. 61(i)(3).
[4] Super. Ct. Crim R. 61(i)(5)
[5] Super. Ct. Crim. R. 61(d)(2)(i)
[6] Super. Ct. Crim. R. 61(d)(2)(ii)

in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[7] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[8]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[9] and adopted by the Delaware Supreme Court in *Albury v. State*.[10]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[11] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the

---

[7] *State v. Gattis*, 1995 WL 790961 (Del. Super.).
[8] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[9] 466 U.S. 668 (1984).
[10] 551 A.2d 53, 58 (Del. 1988).
[11] *Strickland*, 466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

proceedings would have been different, that is, actual prejudice.[12] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[13] When examining the representation of counsel pursuant to the first prong other the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable .[14] This standard is highly demanding.[15] *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of hindsight ."[16]

Following a complete review of the record in this matter, it is abundantly clear that Husfelt has failed to allege any facts sufficient to substantiate his claims that his attorney was ineffective. I find Trial Counsel's Affidavit, in conjunction with the record, more credible that Husfelt's self-serving claims that his Counsel's representation was ineffective. Husfelt's Counsel clearly denied the allegations.

Husfelt was facing the possibility of many years in jail, including mandatory minimum time had he been indicted on a Second-Degree Murder Charge and convicted on all counts. The sentence and plea were very reasonable under all the

---

[12] *Id.*

[13] *See* e.g., *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[14] *Albury*, 551 A.2d at 59 (citing *Strickland, 466* U.S. at 689*)*

[15] *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)).

[16] *Strickland*, 466 U.S. at 689

circumstances, especially in light of the strong evidence against him. Prior to the entry of the plea, Husfelt and his attorney discussed the case and the plea. The plea bargain was clearly advantageous to Husfelt. Counsel was successful in negotiating a beneficial plea bargain with the State. Counsel's representation was certainly well within the range required by *Strickland*. Additionally, when Husfelt entered his plea, he stated he was satisfied with the Defense Counsel's performance. He is bound by his statement unless he presents clear and convincing evidence to the contrary.[17] Consequently, Husfelt has failed to establish that his Counsel's representation was ineffective under the *Strickland* test.

Even assuming, *arguendo,* that Counsel's representation of Husfelt was somehow deficient, Husfelt must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal. [18] In an attempt to show prejudice, Husfelt simply asserts that his counsel was ineffective by coercing him into pleading guilty. Husfelt's Trial Counsel clearly denied coercing him or being unprepared. My review of the facts of the case leads met to conclude that Counsel's representation of Husfelt was well within the

---

[17] *Mapp v. State*, 1994 WL 91264, at *2 (Del.Supr.) (citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

[18] *Larson v. State*, 1995 WL 389718, at *2(Del.Supr.) (citing *Younger v. State,* 580 A.2d 552, 556 (Del. 1990*))*.

requirements of the Sixth Amendment and no prejudice has been demonstrated. His statements are insufficient to establish prejudice, particularly in light of the evidence against him. Therefore, I find Husfelt's grounds for relief are meritless.

To the extent that Husfelt alleges his plea was involuntary, the record contradicts such allegations. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to a Plea Colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[19] At the guilty-plea hearing, the Court asked Husfelt whether he understood he would waive his constitutional rights, if he entered the plea including the right to suppress evidence; if he understood each of the constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form ("Guilty Plea Form"); and whether he gave truthful answers to all the questions on the form. The Court asked Husfelt if he had discussed his plea and its consequences fully with his attorney. The Court also asked Husfelt if he was satisfied with this counsel's representation. Husfelt answered each of these questions affirmatively.[20]  I find Counsel's representations far more credible than Husfelt's self-serving, vague allegations.

Furthermore, prior to entering his plea, Husfelt signed a Guilty Plea Form and Plea Agreement in his own handwriting. Husfelt's signature on the forms indicate

---

[19] *Godinez v. Moran*, 509 U.S. 389, 400 (1993).
[20] *State v. Husfelt*, Del. Super. ID No. 1908011284 (September 1, 202) Tr. at TBD

that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Husfelt is bound by the statements he made on the signed Guilty Plea Form unless he proves otherwise by clear and convincing evidence.[21] I confidently find that Husfelt entered his plea knowingly and voluntarily and that Husfelt's grounds for relief are completely meritless.

## CONCLUSION

I find that Husfelt's Counsel represented him in a competent and effective manner as required by the standards set in *Strickland* and that Husfelt has failed to demonstrate any prejudice stemming from the representation. I also find that Husfelt's guilty plea was entered knowingly and voluntarily. I recommend that the Court ***deny*** Husfelt's Motion for Postconviction Relief as procedurally barred and meritless.

/s/Andrea M. Freud
Commissioner


AMF/jan
oc:    Prothonotary
cc:    Resident Judge Jeffrey J Clark
       Jason C. Cohee, Esq.
       Anthony J. Capone, Esq.
       Bradford J. Husfelt, SCI

---

[21] *Somerville v. State*, 703 A.2d 629, 632 (Del.1997)